708 A.2d 446

JOHN SCHETTINO, PLAINTIFF–APPELLANT, v. ROIZMAN DEVELOPMENT, INC., ISRAEL ROIZMAN, INDIVIDUALLY, FAIRVIEW ASSOCIATES '94 L.P., BILTMORE PROPERTIES, LTD., INC., AND CRYSTAL LAKE, INC., DEFENDANTS–RESPONDENTS.

APPEAL OF BELGIOVINE ENTERPRISES, BELGIOVINE ENTERPRISES, INC., AND BELGIOVINE DEVELOPMENT, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued March 23, 1998—Decided April 23, 1998.

Before Judges LANDAU and COLLESTER.

*John J. D'Anton*, argued the cause for appellant.

*Joseph B. Fiorenzo,* argued the cause for respondents Roizman Development, Inc., Israel Roizman and Fairview Associates '94 L.P. (*Sokol, Behot & Fiorenzo,* attorneys; *Mr. Fiorenzo,* of counsel; *Mr. Fiorenzo* and *Susan I. Wegner,* on the brief).

*David O. Marcus,* argued the cause for respondents Biltmore Properties, Ltd., Inc. and Crystal Lake, Inc. (*Shapiro & Croland,* attorneys; *Mr. Marcus,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Plaintiff John Schettino, a licensed New Jersey real estate broker, filed a complaint in the Law Division against defendants Roizman Development, Inc., Israel Roizman (Roizman), Fairview Associates '94 L.P. (Fairview), Biltmore Properties, Ltd., Inc. (Biltmore), Crystal Lake, Inc. (Crystal), and Belgiovine Enterprises, Belgiovine Enterprises, Inc. and Belgiovine Development (collectively referred to as Belgiovine defendants) [1].

Roizman is the principal shareholder of Roizman Development, one of three general partners of Fairview (collectively referred to as Roizman/Fairview). Crystal is the successor-in-interest to Biltmore (collectively referred to as Biltmore/Crystal).

Plaintiff's complaint alleged his right to a commission totaling $390,000 for the sale of property known as Lot 3, Block 721 and 371–377 Bergen Boulevard, Fairview, New Jersey (the "property"), and tortious interference with this right.

Roizman/Fairview defendants served and filed an offer of judgment with the Law Division in favor of plaintiff in the amount of $1,000. Thereafter, those defendants moved for summary judgment, and plaintiff filed a cross-motion to compel discovery of documents in a controversy between one of the principals of the

---

[1] The claim against Belgiovine defendants has not been pursued (Belgiovine defendants did not participate below or in the appeal) and we presume it is abandoned.

Belgiovine defendants, Vincent Belgiovine (Belgiovine), and Roizman Development.

The judge granted summary judgment in favor of Roizman/Fair-view, dismissing the complaint as to them with prejudice. Plaintiff's cross-motion to compel production of documents was denied. We denied leave to appeal on April 22, 1997.

Roizman/Fairview's motion for an award of counsel fees pursuant to *R.* 4:58-3 was granted on May 2, 1997. The judge fixed the fee award at $17,746.44. Apparently unaware of our denial of leave to appeal, enforcement and execution of the counsel fees award was stayed pending final disposition of plaintiff's "appeal" to the Appellate Division.

On June 16, 1997, plaintiff filed a notice of "appeal" purportedly from the order granting counsel fees to Roizman/ Fairview. In August 1997 a consent order for final judgment was entered among the parties pursuant to *R.* 4:42-2, providing judgment in favor of Biltmore/Crystal, dismissing plaintiff's complaint against them with prejudice. This rendered final the previous orders. Plaintiff then filed an amended notice of appeal, challenging the orders granting summary judgment and awarding counsel fees to Roizman/Fairview, as well as the consent order that entered final judgment.

### The Factual Background

Plaintiff was the broker for a sale of the property in late 1985 or early 1986. He was paid a commission. The property was sold again in 1988 by Biltmore to the Belgiovine defendants, with Biltmore retaining a mortgage on the property. Although plaintiff was not involved in this sale he "knew of " Belgiovine.

In November 1993 plaintiff's brother told him that Leon Sokol, Roizman's attorney, wanted to arrange a meeting between Roizman and the current owner of the property. Plaintiff met with Roizman, Sokol and Belgiovine at the property in November 1993. According to plaintiff, Roizman's purchase for a price named by

Belgiovine as $12,000,000 was discussed, as was the pending foreclosure on the property by Biltmore, the mortgage holder. Roizman also requested building plans from Belgiovine at that time. Later, Sokol called plaintiff noting that the building plans had not been delivered. Plaintiff spoke with Belgiovine, who then delivered a set of plans. No listing agreement was entered into between plaintiff or his brokerage firm, and any of the defendants.

In 1990, long before the November 1993 meeting, Belgiovine Enterprises, Inc., the owner of the subject property, filed its Chapter 11 Bankruptcy petition. Biltmore, holder of Belgiovine's mortgage, obtained relief from the automatic bankruptcy stay pursuant to a consent order in 1991, and continued the foreclosure action already filed in the Chancery Division, Bergen County. The Chapter 11 reorganization proceeding was converted to a Chapter 7 liquidation by consent order in 1992. In 1993, judgment in the foreclosure action was entered in favor of Biltmore. An order authorized abandonment of the property. A second order authorizing a sheriff's sale of the property pursuant to the judgment of foreclosure was entered by the Bankruptcy Court on July 13, 1993. Defendant Biltmore, the mortgagee, bought in the property on January 14, 1994 at the sheriff's sale.

In January 1994, plaintiff wrote a letter to Sokol, Roizman's attorney, requesting protection of his "commission with respect to any contract of sale entered into between your client and Joseph Berado [a principal of Biltmore] and or the Belgiovinnis [sic]." Plaintiff says his attorney also wrote a letter in March 1994 to counsel for the principals of Biltmore/Crystal advising that plaintiff was entitled to a commission, and that Biltmore/Crystal's counsel replied that his clients had no knowledge of plaintiff or his right to a commission. The latter two letters are not in the record.

Roizman Development agreed in April 1994 to purchase the property from Crystal, Biltmore's successor. In July 1994 Crystal sold the property to Fairview, Roizman's designee, for $7.8 million dollars. No commission was paid to plaintiff.

## The Arguments

■ Plaintiff asserts that the judge abused his discretion by prematurely granting summary judgment in favor of defendants when discovery was not complete, and that the judge also erred as a matter of law. We find these arguments to be without merit, *R.* 2:11–3(e)(1)(E), and affirm the award of summary judgment to the defendants [2].

Plaintiff's notice to take deposition and the subpoena duces tecum were outside the time provided for discovery by *R.* 4:24–1. No order enlarging the time for discovery was entered or requested. In consequence, the judge did not abuse his discretion, as appellant argues, by granting summary judgment to defendants.

■ Regarding the claim for commission, we note that plaintiff did not comply with the Statute of Frauds. *N.J.S.A.* 25:1–16b [3] provides, in pertinent part:

> Except as provided in subsection d. of this section, a real estate broker who acts as agent or broker on behalf of a principal for the transfer of an interest in real estate ... is entitled to a commission only if before or after the transfer the authority of the broker is given or recognized in a writing signed by the principal or the principal's authorized agent, and the writing states either the amount or the rate of commission.

There is no such writing in this case.

■ Moreover, even assuming there was no dispute as to the existence of an oral agreement, the plaintiff did not meet the requirements of *N.J.S.A.* 25:1–16d [4]. The latter statute permits a

---

[2] As the grant of summary judgment is affirmed, the Biltmore/Crystal argument that plaintiff cannot appeal the consent order dismissing them from the action need not be reached.

[3] Previously, *N.J.S.A.* 25:1–9.

[4] *N.J.S.A.* 25:1–16d provides:

> A broker who acts pursuant to an oral agreement is entitled to a commission only if:
> (1) within five days after making the oral agreement and before the transfer or sale, the broker serves the principal with a written notice which states

broker to collect a commission if, within five days after making an oral agreement, the broker provides a writing to the principal who enlisted his services, stating the *terms of the oral agreement and the rate or amount of commission to be paid.* The first written indication that plaintiff asserted a claim to commission is the January 1994 letter to Roizman's attorney. Apart from exceeding the five day window allowed by statute, the January 1994 letter also fails to contain the rate or amount of commission purportedly agreed to be paid. Indeed, it makes no mention of a prior oral agreement, or its terms. The statute "represents a strong statement of public policy by the Legislature which cannot be ignored." *McCann v. Biss,* 65 *N.J.* 301, 309, 322 *A.*2d 161 (1974).

The foregoing disposes of plaintiff's case as a matter of law. We note additionally, however, that plaintiff does not even appear to have been the efficient procuring cause of the sale between Roizman/Fairview and Biltmore/Crystal. Plaintiff's role was limited to introducing Roizman to Belgiovine. Belgiovine was unable to sell the property because the order of foreclosure on the property had been approved by the Bankruptcy Judge approximately four months prior to the November 1993 meeting and a sheriff's sale of the property was imminent. Moreover, a break in negotiations occurred when Roizman discovered Belgiovine could not sell the property, and as a result ceased negotiations. Thereafter Roizman began negotiating with the Biltmore/Crystal defendants who had foreclosed upon the property. A broker must cause the seller to negotiate with a customer, produced by the broker, who is ready, able and willing to perform, and where the transaction is later consummated without a substantial break in

that its terms are those of the prior oral agreement including the rate or amount of commission to be paid; and

(2) before the principal serves the broker with a written rejection of the oral agreement, the broker either effects the transfer or sale, or, in good faith, enters negotiations with a prospective party who later effects the transfer or sale.

the ensuing negotiations. *In re Roth,* 120 *N.J.* 665, 673, 577 *A.*2d 490 (1990).

## Counsel Fees

█ Plaintiff's final argument on appeal concerns the grant of Roizman/Fairview's motion for counsel fees under *R.* 4:58–1, –3.[5]

Counsel fees in the amount of $17,746.44 were awarded, although the judge expressed a personal preference to again consider the issue of counsel fees under that rule after this court decided the appeal. Roizman/Fairview points out that plaintiff has argued that this issue is governed by *R.* 4:58–2. *R.* 4:58–2 deals with the consequences of one defendant's response to a *claimant's* offer where there are multiple defendants against whom a joint and several judgment is sought. However, in Pressler, *Current N.J. Court Rules,* comment on *R.* 4:58–1, –2, –3, p. 1415 (1998), the commentator observes:

> Similarly, an offer made by a single defendant to the claimant to pay a specific amount as his pro rata share should *not* be considered as an offer within the intendment of this rule such as will result in binding the claimant to the consequences stated in *R.* 4:58–3. (Emphasis supplied).

We have reviewed the offer of judgment submitted on behalf of Roizman/Fairview, together with their counsel's explanatory letter of October 7, 1996 making clear that the offer of judgment and a letter written under *R.* 1:4–8(b)(1) (prerequisite for frivolous pleading sanctions) were to secure a dismissal of the complaint "against our client." The latter phrase points up the existence of a question as to whether the offer by Roizman/Fairview was an offer to pay a pro rata share. It does not, in any event, appear to be a tender by one defendant on behalf of all defendants, an unlikely interpretation.

---

[5] *R.* 4:58–3 provides, in pertinent part:

> If the offer of a party other than the claimant is not accepted and the determination is at least as favorable to the offeror as the offer, the offeror shall be allowed, in addition to costs of suit, a reasonable attorney's fee, for such subsequent services as are compelled by the non-acceptance, which shall belong to the client and constitute a prior charge upon the judgment.

While the language of *R.* 4:58–1, –2 and –3 may leave room for future clarification and improvement, we believe it sufficiently clear that the intention of the three-part Rule is to address and obviate piecemeal offers or acceptances thereunder by either a claimant or defendant in multi-party actions, particularly if the pro rata intention is unclear. In this regard, we adopt and endorse the above quoted extract from the comment to *R.* 4:58.

Accordingly we reverse the counsel fee award to the Roizman/Fairview defendants. In all other respects the orders under review are affirmed.