730 A.2d 797

JOHN SCHETTINO, PLAINTIFF–RESPONDENT, v. ROIZMAN DE-
VELOPMENT, INC., ISRAEL ROIZMAN, INDIVIDUALLY,
FAIRVIEW ASSOCIATES 94 L.P., DEFENDANTS–APPEL-
LANTS, AND BILTMORE PROPERTIES, LTD., INC., BELGIOV-
INE ENTERPRISES, BELGIOVINE ENTERPRISES, INC.,
BELGIOVINE DEVELOPMENT, AND CRYSTAL LAKE, INC.,
DEFENDANTS.

Argued March 1, 1999—Decided June 21 1999.

*Joseph B. Fiorenzo,* argued the cause for appellants (*Sokol, Behot & Fiorenzo,* attorneys; *Mr. Fiorenzo* and *Susan I. Wegner,* on the brief).

*John J. D'Anton,* argued the cause for respondent.

The opinion of the Court was delivered by

POLLOCK, J.

The issue is whether, in an action asserting joint and several liability of multiple defendants, a single defendant, following rejection of its offer to settle the claim against it, may be awarded attorney's fees pursuant to the offer-of-judgment rule, *Rule* 4:58–1, –2 and –3.

Plaintiff, John Schettino, alleged that four defendants were jointly and severally liable to him for a real estate broker's commission of $390,000. One set of defendants, Israel Roizman, Roizman Development, Inc., and Fairview Associates 94 L.P. (collectively, "Roizman") offered to settle its share of liability for $1000. Schettino rejected the offer. The Law Division thereafter granted Roizman's motion for summary judgment and dismissed plaintiff's complaint. The court then awarded Roizman attorney's fees incurred after Schettino had rejected its offer.

The Appellate Division affirmed the dismissal, but vacated the award of attorney's fees. 310 *N.J.Super.* 159, 167–68, 708 *A.*2d 446 (App.Div.1998). It held that the offer-of-judgment rule does not apply when a single defendant in a multi-defendant action makes an offer of settlement representing only its pro rata share of liability.

We granted Roizman's petition for certification to review the denial of attorney's fees, 156 *N.J.* 411, 719 *A.*2d 642 (1998), and now affirm. We hold that a plaintiff who has asserted that multiple defendants are jointly and severally liable is not subject to the financial consequences of *Rule* 4:58–3 for rejecting an offer by a single defendant to settle only the claim against it. We further hold that, because Schettino's action was for unliquidated damages and did not result in an award "in excess of $750," Roizman is not entitled to counsel fees under *Rule* 4:58–3. Lastly, in light of the concerns raised by this appeal, we refer the matter

to the Civil Practice Committee for reconsideration of the offer-of-judgment rule.

I.

· In 1985, Schettino, a licensed real estate broker, arranged for the sale of property at 371–377 Bergen Boulevard, Fairview, New Jersey ("the property") to Biltmore Properties, Ltd. ("Biltmore"). Three years later, Biltmore sold the property, subject to a purchase money mortgage, to Belgiovine Enterprises, Belgiovine Enterprises, Inc., and Belgiovine Development (collectively, "Belgiovine"). Schettino was not involved in that sale.

Belgiovine began development of the property, but encountered financial difficulties and could not meet its monthly mortgage payments. In 1990, Belgiovine filed a Chapter 11 bankruptcy action in the Bankruptcy Court. Biltmore moved to foreclose, and in May 1993, the Bankruptcy Court entered a judgment directing the sale of the property.

Six months later, before the foreclosure sale, Roizman became interested in purchasing the property from Belgiovine. Roizman's attorney asked Schettino to arrange a meeting between Roizman, which apparently did not know that Biltmore had foreclosed on the property, and Belgiovine. According to Schettino, Roizman and Belgiovine discussed both a purchase price of $12 million and the pending foreclosure action. In contrast, Roizman asserts that Schettino falsely represented himself as Belgiovine's broker. Roizman also states that Schettino did not disclose the impending foreclosure sale. At some point, the negotiations ceased when Roizman discovered that Belgiovine could not sell the property.

According to Roizman, from that point forward Schettino no longer was involved in the sale. Schettino, however, claims that he remained involved and that Belgiovine introduced Roizman to Crystal Lake, Inc. ("Crystal Lake"), Biltmore's successor-in-interest, which had purchased the property at the foreclosure sale in January 1994. Schettino concedes that no defendant entered into a written listing agreement with him.

One week after Crystal Lake purchased the property, Schettino sent a letter to Roizman seeking protection of his commission if Roizman purchased the property from Crystal Lake. In July 1994, Crystal Lake sold the property to Roizman for $7.8 million. Neither party paid a commission to Schettino.

On July 15, 1996, Schettino filed a complaint in the Law Division asserting joint and several liability against Roizman, Biltmore, Crystal Lake, and Belgiovine. Schettino claimed a real estate commission of $390,000 as the "efficient procuring cause of the sale" to Roizman. The complaint also asserted that defendants tortiously interfered with his right to a commission.

On three separate occasions, Roizman's attorney demanded that Schettino withdraw the complaint. First, on September 17, 1996, the attorney sent Schettino's attorney a notice, pursuant to *Rule* 1:4–8(b)(1), explaining why Schettino's action was frivolous as a matter both of fact and of law. The letter recited that Biltmore had foreclosed Belgiovine's interest in the property, and that because of the foreclosure Belgiovine had not sold the property to Roizman. Instead, Roizman had acquired the property in an unrelated purchase from Crystal Lake. Significantly, the letter expressly advised that Schettino's claim for a commission was barred by the Statute of Frauds, *N.J.S.A.* 25:1–16(b), which provides in relevant part that a broker is entitled to a commission "only if before or after the transfer the authority of the broker is given or recognized in a writing signed by the principal or the principal's authorized agent, and the writing states either the amount or the rate of commission."

Second, before filing an answer, Roizman served Schettino with an offer of judgment for $1000. Schettino rejected the offer.

Finally, on October 7, 1996, Roizman's counsel sent a letter to Schettino's counsel warning that Roizman would apply for counsel fees. The letter stated in part:

[I]t will be necessary for us to perform additional legal services on behalf of our client. . . . Your client's rejection of our Offer of Settlement will ultimately mean

that he will be responsible for counsel fees incurred in obtaining a dismissal of the action.

It is unfortunate that Mr. Schettino will require our client to go through the time and expense of obtaining a dismissal when there exists no factual or legal basis for the claim. Fortunately the Court Rules now permit us to be made whole by being reimbursed for those fees unnecessarily incurred.

On January 24, 1997, Roizman moved for summary judgment. The Law Division granted the motion both because of Schettino's failure to comply with the Statute of Frauds and because of the lack of any agreement by Roizman or Crystal Lake to pay Schettino a commission. The Appellate Division denied Schettino's motion for leave to appeal.

Pursuant to *Rule* 4:58–3, the Law Division granted Roizman's motion for counsel fees of $17,746.44. The court stayed execution of the award, indicating that it would reconsider the award on completion of plaintiff's appeal.

Thereafter, the Law Division entered a consent order for final judgment dismissing with prejudice Schettino's claim against Biltmore and Crystal Lake. Schettino has not pursued his claim against Belgiovine, although the record does not reflect that the claim was ever dismissed.

On Schettino's appeal, the Appellate Division affirmed the grant of summary judgment for Roizman and the dismissal of the complaint against Biltmore and Crystal Lake. 310 *N.J.Super.,* *supra,* at 167–68, 708 *A.*2d 446. The court held that Schettino was not entitled to a commission because he had not been the "efficient procuring cause of the sale" and he had not complied with *N.J.S.A.* 25:1–16(b). 310 *N.J.Super., supra,* at 166–67, 708 *A.*2d 446. As the Appellate Division explained, Schettino failed to satisfy the statute because he had neither obtained the requisite writing nor complied with *N.J.S.A.* 25:1–16(d), which allows the commission if "within five days after making an oral agreement and before the transfer or sale, the broker serves the principal with a written notice, which states that its terms are those of the prior oral agreement including the rate or amount of commission to be paid." 310 *N.J.Super., supra,* at 165–66, 708 *A.*2d 446. The

only writing Schettino provided to Roizman was sent after the five-day time limit, did not refer to any prior oral agreement, and did not state the rate or amount of commission.

Relying on the unofficial comment to *Rule* 4:58 (the "Comment"), the Appellate Division reversed the award of counsel fees. As the Comment states, "an offer made by a single defendant to the claimant to pay a specific amount as his pro rata share should not be considered as an offer within the intendment of this rule such as will result in binding the claimant to the consequences stated in *R.* 4:58–3." Pressler, *Current N.J. Court Rules*, comment on *R.* 4:58 (1999). Roizman's offer, according to the Appellate Division, constituted an offer by a single defendant to pay its pro rata share of liability, and thus should not be considered an offer under *Rule* 4:58–3. 310 *N.J.Super., supra,* at 167, 708 *A.*2d 446. The court rejected Roizman's contention that its offer was made on behalf of all defendants. *Ibid.* It acknowledged that "the language of *R.* 4:58–1, –2, and—3 may leave room for future clarification and improvement." *Id.* at 168, 708 *A.*2d 446. Nevertheless, the court concluded that "it [is] sufficiently clear that the intention of the three-part Rule is to address and obviate piecemeal offers or acceptances thereunder by either a claimant or defendant in multi-party actions, particularly if the pro rata intention is unclear." *Ibid.*

## II.

The offer-of-judgment rule is "designed particularly as a mechanism to encourage, promote, and stimulate early out-of-court settlement of negligence and unliquidated damages claims that in justice and reason ought to be settled without trial." *Crudup v. Marrero,* 57 *N.J.* 353, 361, 273 *A.*2d 16 (1971). To fulfill its purpose, the rule imposes financial consequences on a party who rejects a settlement offer that turns out to be more favorable than the ultimate judgment. *Rule* 4:58–3 sets forth the consequences for the non-acceptance of an "offer of a party other than a claimant," ordinarily a defendant:

If the offer of a party other than the claimant is not accepted and the determina- · tion is at least as favorable to the offeror as the offer, the offeror shall be allowed, in addition to costs of suit, a reasonable attorney's fee, for such subsequent services as are compelled by the non-acceptance, which shall belong to the client and constitute a prior charge upon the judgment. In an action for negligence or other unliquidated damages, however, no attorney's fee shall be allowed to such offeror unless the amount awarded to the claimant is in excess of $750.00 and is less than 80 per cent of the offer.

The rule does not state whether it applies when a claimant asserts that multiple defendants are jointly and severally liable and rejects an offer by a single defendant to settle its share of liability. *Rule* 4:58–2, "Consequences of Non–Acceptance of Claimant's Offer," however, addresses the analogous situation in which a single defendant in a multiple-defendant case counteroffers to settle its share of liability in response to a claimant's offer to all defendants to settle the total damages. *Rule* 4:58–2 provides:

If the offer of a claimant is not accepted and the claimant obtains a verdict or determination at least as favorable as the rejected offer, the claimant shall be allowed, in addition to costs of suit, ... a reasonable attorney's fee, which shall belong to the client, for such subsequent services as are compelled by the non-acceptance.... If there are multiple defendants against whom a joint and several judgment is sought, and one of the defendants offers in response less than a pro rata share, that defendant shall, for the purposes of the allowance of interest and attorney's fee, be deemed not to have accepted the claimant's offer.

The Comment explains the intent behind the specific provision in *Rule* 4:58–2 concerning multiple defendants:

The last sentence of *R.* 4:58–2, dealing with multiple defendants, was added by amendment, effective September, 1971. The intention of this provision is to permit the claimant to deal exclusively in terms of the total judgment rather than to require him to accept pro rata shares from individual defendants. Since each defendant's ultimate monetary responsibility depends on the number of defendants ultimately held liable, the claimant is thereby spared the risk, for example, of having to accept one-half of his offer from one of two defendants only to find himself with a no-cause verdict against the other. Thus the rule specifically intends that the claimant need only state the total amount of the judgment he seeks and no individual defendant's offer to pay a pro rata share thereof shall be deemed an acceptance thereof.

According to the Comment, plaintiffs are permitted to act in respect of the total judgment. Consequently, a plaintiff may obtain costs and attorney's fees from a single defendant who offers

to settle only its share of liability. Comparable reasoning, accord-
ing to the Comment, protects plaintiffs, after rejecting a single
defendant's offer, from the obligation to pay costs and attorney's
fees pursuant to *Rule* 4:58–3:

> Similarly, an offer made by a single defendant to the claimant to pay a specific
> amount as his pro rata share should not be considered as an offer within the
> intendment of this rule such as will result in binding the claimant to the conse-
> quences stated in *R.* 4:58–3.

Adopting the Comment's interpretation of *Rule* 4:58, the Appellate
Division vacated the award of attorney's fees to Roizman.

We are satisfied that *Rule* 4:58 as written supports the Appel-
late Division's judgment. A plaintiff who has asserted that multi-
ple defendants are jointly and severally liable for a claim is not
subject to the financial consequences of *Rule* 4:58–3 for rejecting
an offer by a single defendant to settle its share of liability. The
imposition of a financial penalty on a plaintiff for rejecting a
settlement offer by a single joint defendant would undermine the
purpose of joint and several liability. "Joint and several liability
was designed to obviate a plaintiff's burden of proving which share
of the injury each of several defendants was responsible for; the
burden of proof is removed from the innocent plaintiff and placed
upon the wrongdoers to determine among themselves." J.D. Lee
& Barry A. Lindahl, *Modern Tort Law: Liability & Litigation*
§ 19.02 at 652 (Rev. ed.1994). Applying the offer-of-judgment
rule, however, would shift to plaintiffs, when evaluating the fair-
ness of a settlement offer, the burden of determining a single
defendant's share of liability. Rather, plaintiffs need consider
only an offer to settle the entire liability on behalf of all defen-
dants.

Individual defendants still may gain the benefits of the offer-of-
judgment rule by making a joint offer with the other defendants.
Although a single defendant individually may make a settlement
offer, that defendant is not entitled to counsel fees under *Rule*
4:58 if the offer is rejected.

Roizman argues that, to the contrary, courts may award counsel
fees when a plaintiff rejects a single defendant's offer to pay a pro

rata share. As support, Roizman points to the following statement in the Comment:

> If a defendant, however, either as offeror or offeree, does offer to pay a pro rata share which is no less than his obligation as determined after trial (or in an unliquidated case, at least 80 per cent thereof), it may well be inequitable to charge him with the financial consequences of *R.* 4:58–2. In such circumstances, the court may, presumably, consider all pro rata offers by the defendants in fixing both the amount of the award to be made to the successful party, and more significantly, the shares thereof to be made by the adverse parties.

■ Fairly read, the Comment does not provide an individual defendant with a claim for attorney's fees under *Rule* 4:58–3. Instead, the Comment allows a court, in its discretion, to excuse an individual defendant who made a counteroffer representing its pro rata share of liability from an award of counsel fees to the plaintiff under *Rule* 4:58–2. The Comment thus provides a mechanism to distinguish joint defendants who had rejected unreasonably the plaintiff's offer from those who made a reasonable counteroffer.

■ Roizman also argues that it is entitled to counsel fees because it was the only defendant that could have been liable for tortiously interfering with the alleged broker's agreement between Schettino, Biltmore/Crystal Lake and Belgiovine. To support its argument, Roizman contends that it is " 'fundamental' to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." *Printing Mart–Morristown v. Sharp Elecs. Corp.,* 116 *N.J.* 739, 752, 563 *A.*2d 31 (1989). In effect, Roizman claims it was the only defendant in the case.

For purposes of avoiding the sanctions of *Rule* 4:58–3, the complaint, even if baseless, need only have pled in good faith that all defendants were jointly and severally liable on both counts. Nothing indicates that Schettino joined additional defendants merely to evade the consequences of the offer-of-judgment rule. Even if Roizman were the only party liable for the tort claim, the other defendants could have been liable for the contract claim.

Roizman's offer, however, was to settle its liability for both the tort and contract claims.

Lastly, Roizman urges us to carve an exception when no defendant is ultimately found liable for plaintiff's claim. In that setting, according to Roizman, a plaintiff is not at risk of accepting less than all of his damages from one of multiple defendants, only to encounter dismissal later of claims against all others.

In certain cases, however, *Rule* 4:58-3 expressly precludes the award of attorney's fees to defendants when the plaintiff does not prevail: "In an action for negligence or other unliquidated damages, however, no attorney's fee shall be allowed to such offeror unless the amount awarded to the claimant is in excess of $750.00 and is less than 80 per cent of the offer." The purpose of this preclusion is to prevent the transformation of the offer-of-judgment rule into a general fee-shifting rule. These requirements "protect a plaintiff from the penalizing consequences of the rule where he prosecutes the action in good faith, an offer is made by the defendant in a nominal amount, and a no-cause verdict is returned." Pressler, *supra,* comment on *R.* 4:58. Otherwise, a defendant, immediately after the plaintiff files the complaint, could invoke *Rule* 4:58 by making a nominal offer with the sole intent of shifting the cost of litigation to the plaintiff. That result would run counter to the purpose of *Rule* 4:58, which is intended to encourage good-faith settlement offers that reflect the reasonable value of the claim. Regulation of frivolous complaints is remitted to *N.J.S.A.* 2A:15–59.1 and *Rule* 1:4–8.

■■ Recognizing that limitation of *Rule* 4:58 is particularly relevant to a claim for unliquidated damages. In general, damages are unliquidated "where they are an uncertain quantity, depending on no fixed standard, referred to the wise discretion of a jury, and can never be made certain except by accord or verdict." 25 *C.J.S. Damages* § 2 (1966). On the other hand, "liquidated damages are those the amount whereof has been ascertained by judgment or by the specific agreement of the

parties, or which are susceptible of being made certain by mathematical calculation from known factors." *Ibid.*

■ Here, Roizman disputed both Schettino's right to a commission and the amount of any such commission. The absence of a listing agreement or other writing not only defeated plaintiff's claim for a commission, but also prevented the computation of any commission that might be due. If the court had not dismissed Schettino's claim, the amount of any commission would have been an issue for the jury. On the facts of this case, Schettino's claim is best viewed as one for unliquidated damages.

The effect of characterizing Schettino's claim as one for unliquidated damages is that Roizman would have been entitled to counsel fees if Schettino, after rejecting Roizman's settlement offer, had been awarded a sum greater than $750, but less than eighty percent of Roizman's settlement offer of $1000. Because Schettino's claims were dismissed on summary judgment, he did not receive an award "in excess of" $750. Consequently, he is not subject to an award of counsel fees under *Rule* 4:58–3.

Perhaps it would have been more appropriate for Roizman to seek attorney's fees and other sanctions pursuant to the Frivolous Claims Statute, *N.J.S.A.* 2A:15–59.1, and *Rule* 1:4–8, the rule concerning frivolous litigation. The crux of Roizman's objection to Schettino's pursual of his claims is not so much that Schettino should have accepted Roizman's offer as a reasonable settlement of a valid claim, but that the complaint was not supported by the law or by the evidence. *Rule* 1:4–8 directly addresses these concerns.

*Rule* 1:4–8 authorizes the court to impose sanctions, including attorney's fees, if a party's complaint: is filed in bad faith; is not "warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; or contains factual allegations that do not "have evidentiary support or, as to specifically identified allegations, [are neither] likely to have evidentiary support [nor] will be withdrawn

or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support."

Litigation is not cost-free. Merely by instituting a lawsuit, a plaintiff imposes litigation costs on a defendant. When a plaintiff asserts frivolous claims, a defendant may seek relief under *N.J.S.A.* 2A:15–59.1 and *Rule* 1:4–8. A countervailing consideration to enforcement of those strictures, however, is that courts should not discourage claimants from challenging outworn precedents or seeking justifiably to make new law. Thus, courts must balance the policy against frivolous claims with that favoring open access to the courts. In light of the unmistakable requirement of *N.J.S.A.* 25:1–16(b), plaintiff's claim for a commission might have been a candidate for consideration as frivolous litigation. Roizman, however, has not raised that issue at any time in these proceedings.

In allocating the costs of litigation, *Rule* 4:58–3 provides a disincentive for a single defendant in a multiple-defendant action to make an offer of judgment. Only the sanctions of *N.J.S.A.* 2A:15–59.1 and *Rule* 1:4–8 against instituting frivolous actions constrain litigants. The institution of an action, particularly a complex action involving allegations of joint and several liability, nonetheless can impose substantial financial costs on a defendant. Perhaps the interests of litigants and the public would be better served by a Rule of Court providing that a court may award counsel fees to a single defendant in a multiple-defendant action if the defendant offers to settle the claim against it for a sum greater than the judgment that a plaintiff obtains against all defendants. In effect, the rule would treat a single defendant's offer to settle its share of liability like an offer to settle the entire case. Instead of reviewing insubstantial piecemeal offers, the plaintiff could evaluate the individual defendant's offer in the context of the fair value of the claims against all defendants. Yet another issue concerns the prohibition under *Rule* 4:58–3 of awarding counsel fees against a plaintiff who does not recover a judgment of at least $750. The prohibition is paradoxical. A

plaintiff who fails to recover anything is not subject to such an award, but one who recovers more than $750 may be obligated to pay counsel fees. Both issues are fit topics for consideration by the Civil Practice Committee, which we request to review *Rule* 4:58–3.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.