894 A.2d 77 (2006)
384 N.J. Super. 145
Zefkiser A. SEMA and Merita Sema, Plaintiffs-Respondents,
v.
AUTOMALL 46 INC., Nissan 23, Nissan 46 Mitsubishi, Defendants-Appellants, and
John Corino, Frank Esposito, and Julio Maldonado, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 2005.[1]
Decided March 24, 2006.
*79 Robert J. Bennett, Jr., argued the cause for appellants (Betsch and Bennett, attorneys, Teaneck; Mr. Bennett, on the brief).
Donald J. Maizys, argued the cause for respondents (Feitlin, Youngman, Karas & Youngman, attorneys, Fair Lawn; Mr. Maizys, on the brief).
Before Judges WEFING, FUENTES[2] and GRAVES.
The opinion of the court was delivered by
GRAVES, J.A.D.
On August 5, 2000, plaintiff Zefkiser A. Sema (Sema)[3] agreed to purchase a 2000 Nissan Altima automobile from Automall 46, Inc. (Automall).[4] According to Sema, the Automall salesperson told her that the vehicle she ultimately purchased was a new car that had been driven for only ten miles. In addition, all the documents defendant provided to plaintiff at the time of sale, including an odometer statement, confirmed the vehicle had been driven for only ten miles. At trial, however, Automall agreed that the vehicle had been used as a "demo," and it had been driven approximately 9,800 miles prior to its sale to plaintiff.
Plaintiff's complaint sought breach of contract damages and treble damages, counsel fees, and costs of suit for violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -91. In addition, plaintiff charged defendant with violating the Federal Odometer Law (FOL), 49 U.S.C.A. §§ 32701-32711.
During his opening statement, plaintiff's attorney told the jury that plaintiff had been told "a blatant and deliberate lie. The proof will show that the dealership passed off the demo with 9,800 miles on it, as a new car...." On the other hand, defendant's attorney told the jury that the *80 odometer disclosure statement signed by defendant, which showed there were ten miles on the automobile when it was purchased by plaintiff, "was a clerical mistake, an honest mistake." Defendant's attorney also told the jury: "The mileage had been disclosed to her, and disclosed to her, and disclosed to her. The believable evidence shows that Ms. Sema knew from day one she was buying a demo."
Plaintiff paid $17,600 for the vehicle. In an order dated April 1, 2004, the trial court correctly stated that the measure of damages is the difference between the price plaintiff paid for the vehicle and the retail value of the vehicle with the excess mileage. See Cuesta v. Classic Wheels, Inc., 358 N.J.Super. 512, 519, 818 A.2d 448 (App.Div.2003); see also McConkey v. AON Corp., 354 N.J.Super. 25, 52, 804 A.2d 572 (App.Div.2002) (noting that in fraud cases "[t]he benefit-of-the-bargain rule allows recovery for the difference between the price paid and the value of the property had the representations been true." (emphasis and internal quotation marks omitted)), certif. denied, 175 N.J. 429, 815 A.2d 476 (2003).
Arthur Hoogmoed appeared as an expert witness on behalf of plaintiff. He testified that the retail value of the vehicle, with 9,800 miles, was only $14,800. According to Hoogmoed, it is important to consider the make, model, year, condition, mileage and damage, together with other factors, when pricing a vehicle for sale. He also acknowledged "[t]here's more than one way" to "value" a vehicle.
Daniel Galves testified as an expert witness for the defense regarding the value of the Nissan Altima. Galves explained to the jury that, in his opinion, the retail value of the vehicle at the time of sale was between $17,700 and $18,300. Galves agreed, however, that experts use "different methodologies" to determine the retail value of an automobile.
On June 17, 2004, the jury returned its verdict. The jury found: (1) that defendant had violated the CFA by committing "an unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation"; (2) that defendant violated the FOL; and (3) when defendant breached its contract with plaintiff, there "were substantial aggravating circumstances present which constitute[d] a violation of the consumer fraud statute." Nevertheless, the jury apparently concluded that the price plaintiff paid for the automobile was the fair market value of the vehicle, even with the additional mileage, because the jury determined that plaintiff failed to prove she suffered "an ascertainable loss."
Defendant appeals from a post-judgment order of September 30, 2004, awarding counsel fees and costs of suit to plaintiff, pursuant to the CFA, in the total amount of $28,153.65. The same order denied defendant's motion for judgment notwithstanding the verdict, or, in the alternative, a new trial. The order also denied defendant's motion for an award of counsel fees and costs pursuant to R. 4:58-3, based upon defendant's offer to allow judgment in favor of plaintiff in the sum of $6,000.
On appeal, defendant makes the following arguments:
POINT I
PLAINTIFF'S FAILURE TO PROVE AN ASCERTAINABLE LOSS WAS FATAL TO HER CONSUMER FRAUD CLAIM.
POINT II
PLAINTIFF'S REJECTION OF THE OFFER TO ALLOW JUDGMENT BARS HER FROM ANY FEE AWARD.

*81 POINT III

THE TRIAL COURT ERRED IN DENYING AUTOMALL'S FEE APPLICATION.
A. THE TRIAL COURT ERRED IN RULING PLAINTIFF'S CFA CLAIM WAS FOR UNLIQUIDATED DAMAGES.
B. THE TRIAL COURT ERRED IN SPECULATING THAT PLAINTIFF MIGHT HAVE SECURED A VERDICT IN EXCESS OF $6,000 TO DENY RELIEF.
After reviewing the record and the applicable law in light of the contentions advanced on appeal, we affirm.
The trial court's reasons for awarding counsel fees and costs to plaintiff included the following:
The jury in this case found that defendant had committed a consumer fraud and had violated the Federal Odometer statute. Plaintiff had a bona fide claim that these violations had resulted in an ascertainable loss. She presented persuasive evidence supporting this claim. A jury question was presented, and the issue was submitted to the jury. Under these circumstances, a jury finding against her on the ascertainable loss claim does not bar her from recovering attorney[']s fees.
We concur with this analysis. Pursuant to N.J.S.A. 56:8-19, "a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages." Cox v. Sears Roebuck & Co., 138 N.J. 2, 24, 647 A.2d 454 (1994) (citing Performance Leasing Corp. v. Irwin Lincoln-Mercury, 262 N.J.Super. 23, 31, 34, 619 A.2d 1024 (App. Div.), certif. denied, 133 N.J. 443, 627 A.2d 1148 (1993)); accord Weinberg v. Sprint Corp., 173 N.J. 233, 252-53, 801 A.2d 281 (2002); see also Thiedemann v. Mercedes-Benz, USA, LLC, 183 N.J. 234, 247, 872 A.2d 783 (2005).
This is so because "[t]he fundamental remedial purpose of the Act dictates that plaintiffs should be able to pursue consumer-fraud actions without experiencing financial hardship." Cox v. Sears Roebuck & Co., supra, 138 N.J. at 25, 647 A.2d 454. Another purpose of the CFA, by way of the counsel fee provision, is to attract competent counsel. Wanetick v. Gateway Mitsubishi, 163 N.J. 484, 490, 750 A.2d 79 (2000). Of course, a plaintiff must demonstrate a "bona fide claim of ascertainable loss [related to the CFA violation] that raises a genuine issue of fact requiring resolution by the factfinder" to trigger the fee-shifting provision of the CFA, even if the plaintiff ultimately loses on the damage claim. Weinberg v. Sprint Corp., supra, 173 N.J. at 253, 801 A.2d 281; see also Thiedemann v. Mercedes-Benz, USA, LLC, supra, 183 N.J. at 247, 872 A.2d 783.
In this case, the record amply supports the trial court's finding that plaintiff asserted a bona fide claim for an ascertainable loss. Therefore, she is entitled to an award of reasonable counsel fees and costs of suit even though she was ultimately unsuccessful in proving an ascertainable loss. Moreover, the FOL is enforceable in state courts, 49 U.S.C.A. 32710(b); Cogar v. Monmouth Toyota, 331 N.J.Super. 197, 751 A.2d 599 (App.Div.2000), and the trial court was required to award counsel fees to plaintiff under the FOL. 49 U.S.C.A. 32710(b); Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 15 (1st Cir.2004); Miller's Apple Valley Chevrolet Olds-Geo, Inc. v. Goodwin, 177 F.3d 232, 233 (4th Cir.1999).
*82 Defendant also argues, as it did before the trial court, that both parties would have been "far better off" if plaintiff had accepted defendant's offer of judgment in the amount of $6,000. In order to promote reasonable settlements, and as a matter of "fundamental fairness," defendant contends that "plaintiff's CFA fee application should be offset by Automall's R. 4:58-1 et seq. rights." This argument was rejected by the trial court, and we agree that defendant is not entitled to an award of counsel fees pursuant to the offer-of-judgment rule.
"The offer-of-judgment rule is designed particularly as a mechanism to encourage, promote, and stimulate early out-of-court settlement of negligence and unliquidated[5] damages claims that in justice and reason ought to be settled without trial." Schettino v. Roizman Dev., Inc., 158 N.J. 476, 482, 730 A.2d 797 (1999) (internal quotation marks omitted). "The rule was intended to penalize a party who rejects a settlement offer that turns out to be more favorable than the ultimate judgment." Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 125, 881 A.2d 719 (2005) (internal quotation marks omitted).
The version of R. 4:58-3 that was in effect at all relevant times during this litigation provided as follows:
Consequences of Non-Acceptance of Offer of Party Not a Claimant
If the offer of a party other than the claimant is not accepted and the determination is at least as favorable to the offeror as the offer, the offeror shall be allowed, in addition to costs of suit, litigation expenses and attorney's fee as prescribed by R. 4:58-2, and any such allowances shall constitute a prior charge upon the judgment. In an action for unliquidated damages, however, no allowances under this rule shall be granted to such offeror unless the amount awarded to the claimant is in excess of $750.00 and is less than 80 per cent of the offer.

[Emphasis added.]
Prior to its amendment in 2004, R. 4:58-3 distinguished between actions for liquidated and unliquidated damages, and it permitted an award of costs and counsel fees to a defendant in an unliquidated damage action only if plaintiff obtained a judgment of at least $750, and the amount of the judgment was less than eighty percent of the offer. Frigon v. DBA Holdings, Inc., 346 N.J.Super. 352, 354, 787 A.2d 966 (App.Div.2002). In liquidated damage actions, however, "[n]o such conditions attend the offer of judgment...." Ibid.
Generally, damages are unliquidated "`where they are an uncertain quantity, depending on no fixed standard, referred to the wise discretion of a jury, and can never be made certain except by accord or verdict.'" Schettino v. Roizman Dev., Inc., supra, 158 N.J. at 486, 730 A.2d 797 (quoting 25 C.J.S. Damages § 2 (1966)). On the other hand, "`liquidated damages are those the amount whereof has been ascertained by judgment or by the specific agreement of the parties, or which are susceptible of being made certain by mathematical calculation from known factors.'" Id. at 486-87, 730 A.2d 797 (quoting 25 C.J.S. Damages § 2 (1966)); see also 22 Am.Jur.2d Damages § 489 (2003) ("`Liquidated damages' are damages the amount of which has been *83 made certain and fixed either by the act and agreement of the parties or by operation of law to a sum which cannot be changed by the proof."); Firefreeze Worldwide, Inc. v. Brennan & Assocs., 347 N.J.Super. 435, 440, 790 A.2d 238 (App. Div.2002) (holding under offer-of-judgment rule that claim for unpaid balance of a contract for goods and counterclaim for commissions under a written agreement were both liquidated damages).
In this case, defendant was not entitled to an award of counsel fees pursuant to the offer-of-judgment rule because plaintiff sought unliquidated damages and the jury did not award plaintiff any damages. As demonstrated by the conflicting expert testimony at the time of trial, there was no fixed standard, formula, or mathematical calculation available to determine the fair market value or retail value of the vehicle at the time of purchase. Therefore, the task of determining plaintiff's damages, if any, was "referred to the wise discretion of [the] jury...." Schettino v. Roizman Dev., Inc., supra, 158 N.J. at 486, 730 A.2d 797. Moreover, both expert witnesses testified there are multiple methods for determining the retail value of a vehicle, rather than one universally agreed upon formula. Accordingly, the damages sought by plaintiff were unliquidated, and defendant's claim for counsel fees and costs under R. 4:58-3 was properly denied.
Affirmed.
NOTES
[1] Although oral argument was held on September 21, 2005, the trial transcripts were not received until February 1, 2006.
[2] Judge Fuentes did not participate in oral argument. With the consent of counsel, he has joined in this opinion. R. 2:13-2(b).
[3] Zefkiser A. Sema purchased the automobile for her daughter, Merita Sema. Because the vehicle was purchased under Zefkiser's name, we refer to Zefkiser A. Sema as plaintiff.
[4] We refer to Automall as defendant because the claims against all individual defendants were dismissed prior to trial. In addition, Nissan 23 and Nissan 46 Mitsubishi are both affiliated with Automall.
[5] Amendments to R. 4:58-3 became effective on September 1, 2004. The current version of R. 4:58-3 does not include the "former dichotomy between liquidated damages and unliquidated damages in respect of the so-called margin of error." Pressler, Current N.J. Court Rules, comment on R. 4:58 (2006).