THERESA CRUDUP, AN INFANT BY HER GUARDIAN *AD LITEM* HORACE CRUDUP AND HORACE CRUDUP, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. NICHOLAS MARRERO AND CARLOS RODRIGUEZ, DEFENDANTS-RESPONDENTS.

Argued November 24, 1970—Decided January 25, 1971.

Mr. *Andrew M. Rockman* argued the cause for plaintiffs-appellants (*Messrs. Levinson, Conover, Lieberman & Fink,* attorneys).

Mr. *Thomas J. Kapsak* argued the cause for defendants-respondents (*Messrs. Seiffert, Frisch & Gruber,* attorneys).

The opinion of the Court was delivered by

FRANCIS, J. The issue here is whether Rules 4:58-1 *et seq.,* the Offer of Judgment rules, apply to the Unsatisfied Claim and Judgment Fund, *N. J. S. A.* 39:6-61 *et seq.* Except for matrimonial causes, the rules were in effect on an experimental basis in all actions tried in the Law Division of the Superior and County Courts of Essex and Middlesex Counties, at the time of trial of the case which gave rise to this appeal. After pointing out that the statutory Fund represents public money deposited therein to satisfy claims and judgments against uninsured motor vehicle operators, the trial judge felt that for reasons of public policy it should not be subjected to the counsel fee and interest assessments contemplated by Rules 4:58-1 *et seq.* Consequently, he held that even though the amount of plaintiffs' recovery brought the case within the rules' mandate, he should exercise his general rule-relaxing authority under *R.* 1:1-2 and deny the request for such allowances. We certified the plaintiffs' subsequent appeal before it was argued in the Appellate Division.

The rules, insofar as they are pertinent here provide:

"* * * [A]ny party may, at any time more than 20 days before the action is first scheduled for trial * * * serve upon any adverse party, without prejudice, and file with the clerk of the court, an offer to take judgment in his favor * * * for a sum stated therein * * *." *R.* 4:58–1.

"If the offer of a claimant is not accepted and he obtains a verdict * * * at least as favorable to him as his offer, he shall be allowed, in addition to costs of suit, six per cent interest on the amount of any money recovery from the date of the offer or the date of completion of discovery, whichever is later, and also a reasonable attorney's fee, which shall belong to the client, not exceeding $750.00. In an action for negligence or unliquidated damages, however, no attorney's fee shall be allowed to the offeror unless the amount of the recovery is in excess of 120 per cent of the offer." *R.* 4:58–2.

In the present case, the plaintiffs served and filed a timely offer to take judgment in the amount of $2500. The Fund declined to settle for that sum but made a counter offer of $1300. Plaintiffs rejected it and the case went to trial resulting in a verdict of $7000 for the infant plaintiff, Theresa Crudup, and $500 on the *per quod* claim of Horace Crudup, her father. The resulting judgments being more than 120% in excess of the offer of judgment, plaintiffs concluded that the interest and counsel fee mandate of Rule 4:58–2 was applicable. Consequently, they sought a counsel fee of $750 and interest at six percent from the date of their offer until payment by the Fund of the trial judgments.

It will be observed that Rules 4:58–1 and –2 are couched in imperative language. A counsel fee up to $750 plus six percent interest on the judgment from the date specified in Rule 4:58–2 "shall be allowed" when the conditions prescribed therein have been met. The rules, as presently applicable, include negligence and unliquidated damage actions in the two counties mentioned above. Such suits in which the Unsatisfied Claim and Judgment Fund will be responsible for payment of the judgment up to the statutory maximum plus "interest and costs" (*N. J. S. A.* 39:6–69, 39:6–73, 39:6–84) are not excluded from its coverage.

The Offer of Judgment rules, and particularly Rule 4:58–2, cast as it is in unqualified mandatory terms, were adopted

deliberately by the Supreme Court. They were designed particularly as a mechanism to encourage, promote and stimulate early out-of-court settlement of negligence and unliquidated damage claims that in justice and reason ought to be settled without trial. It is a matter of common knowledge that the vast majority of such cases are ultimately settled. Unfortunately, the disposition too often takes place on the "court house steps" or just before or after a jury is drawn, rather than in the many months that intervene between the institution of the suit and the ultimate trial date. The failure to make earlier adjustments is a major cause of the clogging of the trial lists and the tremendous backlog of automobile negligence cases that burden our judicial system. To illustrate — at the end of the September 1, 1969-August 31, 1970 court year there were 48,673 civil cases pending in the Law Division of the Superior and County Courts of the State; 28,275 of these were automobile negligence actions. The August 1970 total of all pending cases was over 2,000 more than at the end of the previous court year. Of the automobile negligence cases, 7,547 were in excess of 1½ years old, a substantial number being in excess of 3 years old; 6,985 automobile negligence cases were settled *on the trial date* during the 1969–1970 court year. The total number of such cases settled in the long period between institution of suit and the trial date was 6,157, or 828 less than the number settled on the trial date. Of all the automobile negligence cases disposed of during that year in the entire State, only 1,746 of them were tried to completion by a jury. The number of such jury cases tried to completion in the larger counties of the State is worthy of note:

Bergen .......................................... ................... 306
Camden .......................................... ................... .. 100
Essex ........................................... ................... 244
Hudson .......................................... ................... .... 102
Mercer .... ............................................... 52
Middlesex ............................................... 281
Monmouth ....................................... ................... 202

Morris ............................................... 83
Union ........... ............... . ..................... 79

In the quest for factors which motivated Rules 4:58–1 *et seq.,* the state of the calendar in the county district courts of the State should not be ignored. The district court has been thought of traditionally as a "poor man's court," *i. e.,* one of limited monetary jurisdiction where there was a high promise of expeditious disposition. Unfortunately, as has been noted on other occasions,[1] demands for jury trials there have interfered substantially with the realization of the promise. For example, in the larger counties, the records of the Administrative Director of the Courts show the following with respect to cases pending on August 31, 1970, the end of the 1969–1970 court year:

BERGEN COUNTY:
Total cases pending .................. 3,748
Total jury cases pending .............. 867 or 23+%
Jury cases under 6 mos. of age (automobile
                                    negligence) .... 339
  "     6 to 12 mos. old      "       .... 210
  "     1 to 1½ yrs. old      "       ....  18
  "     1½ to 2 yrs. old      "       .... None
  "     over 2 yrs. old       "       ....   5

CAMDEN COUNTY:
Total cases pending .................. 2,266
Total jury cases pending .............. 352 or 15+%
Jury cases under 6 mos. of age (automobile
                                    negligence) ....  82
  "     6 to 12 mos. old      "       ....  84
  "     1 to 1½ yrs. old      "       ....  61
  "     1½ to 2 yrs. old      "       ....   8
  "     over 2 yrs. old       "       ....   3

ESSEX COUNTY:
Total cases pending .................. 5,358
Total jury cases pending .............. 998 or 18+%

---

[1] 89 *N. J. L. J.* 33 (1966).

Jury cases under 6 mos. of age (automobile
negligence) .... 392
" 6 to 12 mos. old " .... 195
" 1 to 1½ yrs. old " .... 34
" 1½ to 2 yrs. old " .... 24
" over 2 yrs. old " .... 49
HUDSON COUNTY:
Total cases pending ................. 3,183
Total jury cases pending ............. 744 or 23+%
Jury cases under 6 mos. of age (automobile
negligence) .... 218
" 6 to 12 mos. old " .... 203
" 1 to 1½ yrs. old " .... 60
" 1½ to 2 yrs. old " .... 13
" over 2 yrs. old " .... 5
MERCER COUNTY:
Total cases pending ................. 758
Total jury cases pending ............. 76 or 10%
Jury cases under 6 mos. of age (automobile
negligence) .... 37
" 6 to 12 mos. old " .... 6
MIDDLESEX COUNTY:
Total cases pending ................. 1,181
Total jury cases pending ............. 369 or 31+%
Jury cases under 6 mos. of age (automobile
negligence) .... 198
" 6 to 12 mos. old " .... 53
MONMOUTH COUNTY:
Total cases pending ................. 882
Total jury cases pending ............. 104 or 11+%
Jury cases under 6 mos. of age (automobile
negligence) .... 57
" 6 to 12 mos. old " .... 5
" 1 to 1½ yrs. old " .... 1
MORRIS COUNTY:
Total cases pending ................. 1,315
Total jury cases pending ............. 170 or 12+%

Jury cases under 6 mos. of age (automobile
negligence) .... 54
    " 6 to 12 mos. old     "     .... 32
    " 1 to 1½ yrs. old     "     .... 3
    " 1½ to 2 yrs. old     "     .... 2
    " over 2 yrs. old     "     .... 3

PASSAIC COUNTY:
Total cases pending ................. 2,751
Total jury cases pending ............. 809 or 29+%
Jury cases under 6 mos. of age (automobile
negligence) .... 216
    " 6 to 12 mos. old     "     .... 200
    " 1 to 1½ yrs. old     "     .... 87
    " 1½ to 2 yrs. old     "     .... 12

UNION COUNTY:
Total cases pending ................. 2,684
Total jury cases pending ............. 348 or 12+%
Jury cases under 6 mos. of age (automobile
negligence) .... 218
    " 6 to 12 mos. old     "     .... 19

The cited statistics indicate a reason for the ground swell for a change in the method of dealing with automobile damage claims. They indicate also why there is agitation for elimination of jury trials in such cases.[2] This Court, for many years, has pleaded for early settlement of personal injury negligence actions and for abandonment, or at least substantial modification, of the "court house steps" tactic. Currently, even ardent adherents of the present system are pressing for acceptance of the view that early settlement must become the primary order of the day; and they fear that persistence in the status quo may cause the ground swell to eliminate not only the "court house steps," but the

[2]See report of Philadelphia speech of Chief Justice Warren E. Burger of the United States Supreme Court, N. Y. Times, November 14, 1970, at 32, col. 1.

courthouse as well. On the other hand, a doubling of the number of early settlements — a not unrealistic objective — may well calm the storm.

■ At any rate, the factors described above stimulated adoption of the Offer of Judgment rules with which we are now concerned. It is a remedial measure in operation on a test basis and designed to produce early out-of-court settlements. As already pointed out, the broad language does not exclude any negligence or unliquidated damage case from their operation. The Unsatisfied Claim and Judgment Fund has a very substantial number of such cases in the trial lists throughout the State. Every time it tries a case that could and fairly should be settled without trial, disposition of other pending actions, some of which must be tried, is delayed. Accordingly, in our judgment, in the ordinary situation the Fund must be regarded as subject to the Offer of Judgment rules. "Interest" to the extent that it may be imposed under those rules is within the Fund's statutory authorization to pay interest. But even if the statute contained no such authority, the grant of interest under the rules is well within the inherent powers of this Court. The same is true with respect to the grant of counsel fees up to $750. As a procedural sanction they are likewise within our broad constitutional power, and as such they are within the statutory provision for costs. *Compare Red Devil Tools v. Tip Top Brush Co., Inc.,* 50 *N. J.* 563, 576 (1967) ; *Vargas v. A. H. Bull Steamship Co.,* 25 *N. J.* 293, 296 (1957), *cert. den.* 355 *U. S.* 958, 78 *S. Ct.* 545, 2 *L. Ed.* 2d 534 (1958).

■ It is true, as the Fund suggests, that it has administrative and operational complexities which make settlements somewhat more difficult to accomplish than in the ordinary insurance carrier case. See *N. J. S. A.* 39 :6–65 through 69, 70 (m), 72, 73, 82. It points out that investigation of the accident and the injuries claimed in the pending suit may indicate that a substantial defense exists on all aspects of the claim. But, after the Fund has rejected plaintiff's offer of judgment, it happens on occasion that defendant, the un-

insured motorist, fails to appear at the trial, or fails to co-operate, or otherwise wilfully fails to prove as helpful as the investigation led the Fund or its agents reasonably to believe. Consequently, the Fund urges that because its ordinary operation at times brings to its statutorily required defense of uninsured motor vehicle drivers persons who are not as reliable as it hopes for, our Rule 4:58 should not be enforced against it.

Although we are of the opinion that the Fund should not be exempt from the rules as a matter of course, we do accept the view that the circumstances of a particular case may warrant a discretionary determination by the trial court that they should not be applied. But pursuit of such a determination should not await the speculative outcome of the trial. After an offer of judgment has been submitted, if the Fund or its designated representative in good faith rejects the offer, and it appears that the uninsured motorist will not be present at the trial, or will not cooperate in defense of the action, and the Fund believes that under the circumstances an unfavorable trial verdict should not expose it to the interest and counsel fee burden of Rule 4:58, the matter should be brought to the trial court's attention, either before or after rejection of the offer but in advance of the trial, on an application to be relieved therefrom. If the trial judge is satisfied from the facts presented that in fairness and justice the relief ought to be granted, he may do so, in the exercise of the discretion committed to him under Rule 1:1–2.

The dissent suggests that Rule 4:58 should not be applied to the Fund because of the latter's public nature. This means that personal injury accident victims with claims against the Fund can be prevented from receiving their just compensation at the discretion of the Fund for whatever period of years it takes for such cases to be reached for trial and disposed of in that fashion. Approval of that course would be opposed to all equities of the situation. Particularly is this so when that same course of conduct, if pur-

sued by a private insurance carrier, would automatically result in imposition of the counsel fee and interest specified by the Rule.

While it may be true that in the past two years it was necessary for the State to transfer nine million dollars to the Fund in order to meet the claims against it, that burden may have resulted from an inadequate estimate of the sum needed to carry the Fund during each of those two years. The statute contemplates that the sum necessary to carry the Fund annually shall be provided by a fee imposed upon the uninsured motor vehicle registrant and by a specifically apportioned assessment against New Jersey motor vehicle insurance carriers. See *N. J. S. A.* 39:6–63(d) and (e). The Director of the Division of Motor Vehicles is directed to estimate annually, in advance, the sum believed necessary to supply the Fund (*N. J. S. A.* 39:6–63(d)); provision is made for legislative intervention to provide additional sums by the same means for subsequent years when the estimated sum proves inadequate. *N. J. S. A.* 39:6–63(e). It seems plain that the legislative intention is to make the Fund self-sustaining through the means indicated and, thus, to avoid any call on the general public Treasury. An indication of this intention appears in *N. J. S. A.* 39:6–89 wherein the Fund is directed to reimburse the General State Fund for costs paid or incurred by the latter in administering the act.

If the money in the Fund is not sufficient to provide compensation (within the monetary limits fixed by the statute), for members of the public who are injured by the vehicles of uninsured motorists, the remedy is to increase the fee to be paid by the uninsured vehicle registrant and the contribution of insurance carriers, or perhaps in the alternative, to seek legislative approval of a compulsory insurance system.

Another consideration should be mentioned. The uninsured motorist remains liable to the Fund for any sum paid by it in his behalf either in settlement or by way of judg-

ment after trial. Naturally, he has an interest in keeping that liability within reasonable limits through settlement by the Fund of claims and suits against him. For example, in the present case the Fund could have saved at least $5,000 if its course had been settlement and not trial.

It is common knowledge that the Fund has a very substantial number of cases burdening the trial lists through the State. Except for the unusual circumstances which, as we have indicated, may relieve the Fund from the application of Rule 4:58, there is no sound reason why it should not act with reasonable dispatch in effectuating settlements.

This is the first case in which the Fund's responsibility under Rule 4:58 has been presented to us. The basis for possible relief therefrom which has been set forth above has not been articulated previously. Consequently, neither the Fund nor the trial court were aware of a requirement for a timely fact-supported application to be relieved from its mandate. Under the circumstances the matter will be remanded to the trial court in order to permit such a proceeding to be instituted.

The judgment of the trial court is modified and the matter remanded for the purpose indicated.

PROCTOR, J. (dissenting). I dissent. The Fund is the product of remedial social legislation and was intended to "provide a measure of relief to persons who sustain losses or injury inflicted by financially irresponsible or unidentified owners or operators of motor vehicles, where such persons would otherwise be remediless." *Corrigan v. Gassert,* 27 *N. J.* 227, 233 (1958). For that purpose, the Fund Law provided for the creation of a fund partly by charging extra fees to those registering uninsured motor vehicles and partly by levying an assessment against liability insurance companies doing business in this State. *N. J. S. A.* 39:6–63. The Fund has always been on precarious financial grounds. In the past two years the State has transferred approximately nine million dollars to the Fund in order that it may

meet claims filed against it. These funds should be confined to the use intended by the Legislature especially since their expenditures increase the insurance rates of insured motorists.

The rules at issue (*R.* 4:58–1 *et seq.*) were promulgated by this Court in 1969, many years after the enactment of the legislation creating the Fund in 1952 (*L.* 1952, *ch.* 174; *N. J. S. A.* 39:6–61 *et seq.*) and were clearly not within the legislative contemplation. *N. J. S. A.* 39:6–69 limits the amount of recovery for one accident to $10,000 *"exclusive of interest and costs."* (emphasis added) The majority construes this language as authorizing application of the rules, but adds that even if the statute did not authorize such application, it would be "well within the inherent power of this Court." I think that the majority is wrong on both points. If the grant of interest and counsel fees is within the inherent power of this Court, even a specific legislative prohibition against such interest and fees contained within the statute would be ineffective. I cannot accept that proposition. See *Garcia v. Morales,* 47 *N. J.* 269 (1966), *appeal dismissed,* 385 *U. S.* 449, 87 *S. Ct.* 613, 17 *L. Ed.* 2d 511 (1967). And if this Court lacks the power to order the Legislature to expend funds for interest and counsel fees where there is an express prohibition, the same should be true where the clear intent and purpose of the statute is to that effect as I believe it is here. Plainly, the statute does not authorize such expenditures. Certainly counsel fees are not authorized. The statute does not specifically authorize such fees and they are not ordinarly included in the concept of "costs." Costs are principally comprised of "statutory allowances, amounts paid the clerk in fees, and various other specified disbursements of counsel including sheriff's fees, witness fees, deposition expenses and printing costs." *U. S. Pipe & Foundry Co. v. United Steelworkers of America,* 37 *N. J.* 343, 355 (1962). Nor is the kind of interest contemplated by the rules within the purview of the statute. The "interest" referred to in the statute never contemplated

interest on proposed settlement offers, but rather the interest payable from the date specified in the order directing payment out of the Fund to the date when payment is made. *Lindsey v. Boles,* 61 *N. J. Super.* 516 (Co. Ct. 1960). I can only conclude that the statute does not provide for counsel fees or for the kind of interest contemplated by *R.* 4:58–1 *et seq.* And since we do not have any inherent power to order the expenditure of public funds in this area, the rules should not apply to the Fund.

Moreover, it is questionable whether the policy of judicial economy which undergirds the majority decision will be furthered by the result reached. Recognizing that the Fund does not occupy the same status as the usual defendant in a negligence action, the majority directs that after an offer of judgment has been submitted, the Fund may reject the offer without incurring the sanctions of the rules if the reasons are brought to the attention of the trial court in advance of trial and are deemed valid. Thus, the holding leads to ad hoc decisions on the validity of the Fund's reasons why it should not be subjected to the sanctions of the rules. These decisions necessarily consume judicial time and may spawn further litigation. In any event, there has been no showing by the majority that application of the rules to the Fund will have any appreciable effect in relieving court congestion. Almost all drivers today are insured (see *Immer v. Risko,* 56 *N. J.* 482, 489 n. 3 (1970)) and suits against the Fund constitute a relatively insignificant part of all automobile negligence suits. I am fully aware that our calendars are congested with automobile negligence cases and that the problem is a pressing one which calls for drastic action. But the answer is certainly not to expend funds not provided for that purpose especially where the goal of relieving calendar congestion may not even be furthered.

In my judgment application of *R.* 4:58–1 *et seq.* is a serious threat to the Fund's sound administration, and a threat which far outweighs any possible advantage in terms of judicial economy.

*For modification and remandment*—Chief Justice WEIN-
TRAUB and Justices FRANCIS, HALL, SCHETTINO and HANE-
MAN—5.

*For affirmance*—Justice PROCTOR—1.