746 A.2d 1003 (2000)
329 N.J. Super. 1
CITY OF CAPE MAY, A Municipal Corporation of the State of New Jersey, Plaintiff-Respondent,
v.
J. Fred COLDREN, Defendant/Third-Party Plaintiff-Appellant, and
Edward J. Mahaney; Robert W. Elwell, Sr.; William G. Gaffney; John Bailey; Thomas M. Phelan; and John Does 1-10, Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1999.
Decided February 25, 2000.
*1004 J. Fred Coldren, defendant/third-party plaintiff-appellant pro se.
Gregory D. Saputelli, Haddonfield, for plaintiff-respondent City of Cape May (Obermayer, Rebmann, Maxwell & Hippel, attorneys; Mr. Saputelli and Kimberly D. Sutton, on the brief).
Before Judges STERN, KESTIN and STEINBERG.
The opinion of the court was delivered by STERN, P.J.A.D.
Defendant, J. Fred Coldren, appeals from a final judgment entered on May 18, 1998 in favor of plaintiff, City of Cape May, in the amount of $20,540.41. An award of $19,046.72 in favor of defendant on his counterclaim was offset by an award of $39,587.13 to plaintiff for legal fees and costs based on defendant's non-acceptance of an offer of judgment,[1] resulting in the net award to plaintiff. Defendant also appeals from the June 19, 1998 order denying his motion for reconsideration.
*1005 Plaintiff commenced this action seeking a declaratory judgment that defendant had no tenure rights as its City Manager, because the position was abolished when the city changed its form of government. Defendant counterclaimed seeking a declaration of tenure and reinstatement as City Manager, and asserted a breach-of-contract claim.[2] After the trial judge ruled in favor of the city on the tenure issue and other counts of the counterclaim were dismissed, the city made an offer of judgment with respect to the remaining count of the counterclaim, but defendant rejected it and prevailed at the trial.
On this appeal, defendant claims that he "Earned Tenure as City Manager in January 1983 pursuant to N.J.S.A. 40:82-3(a);" that regardless of whether he received statutory tenure, the plaintiff-municipality was "barred from challenging Defendant's established tenure as City Manager" because his tenure status was already addressed in prior litigation between the parties, and that, in any event, "N.J.S.A. 40:69A-207 protected Defendant's office from being abolished without due process." Independently, defendant contends that the plaintiff's offer of judgment directed only to one count of his counterclaim, count two seeking, inter alia, insurance coverage, "overtime and compensatory benefits," "unused vacation and sick days" and reimbursement of expenses, did not apply because the "piecemeal" offer was not designed to settle all claims.
In his May 3, 1996 order, the trial judge granted plaintiff's motion for partial summary judgment premised on his determination that the office of City Manager was abolished by a change in form of government approved by voters, effective July 1, 1995. The ruling on the contract counterclaim followed the subsequent trial, at which the judge concluded that defendant was entitled to $19,046.72 for unused vacation, sick and personal leave time. No issue is raised on this appeal with respect to the trial or that finding.

I.
We agree with the trial judge, substantially for the reasons he stated, that defendant was neither entitled to tenure nor to reinstatement to his position as City Manager. The judge concluded that because defendant's 1980 appointment as City Manager was indeterminate, and his reappointment was made before the end of his first three years in office and after the adoption of N.J.S.A. 40:82-3, which abolished tenure for that position, defendant did not achieve tenure before his discharge. In any event, the trial judge found that the change in the form of government from municipal manager to "Small Municipality Plan A" pursuant to N.J.S.A. 40:69A-115 et seq., effective July 1, 1995, was dispositive of the issue.[3]
N.J.S.A. 40:69A-207 does exempt from the abolition of office "any official or employee now protected by any tenure of office law" as defendant contends. But we agree with the trial judge that N.J.S.A. 40:69A-207 cannot be interpreted to provide continued tenure in these circumstances because there would be no meaningful result flowing from the change of Cape May's form of government if its City Manager remained tenured in that position despite the new form of government which abolished the office. As stated by the judge:
In our case the public has spoken very clearly with respect to this particular issue, and the public has indicated its position that this office, this form of government is no longer to be operative in the City of Cape May. The voters of *1006 the City of Cape May have determined to change their form of government, and the council people that have been elected into office were mandated to implement that change.
The ordinance which was passed in July of 1995 did in fact implement that change and abolished the office of municipal manager. Instead, the essential powers of the municipal manager's position are now to be employed by the mayor, an elected position. Those two positions, that is, the position of city manager and the position of mayor under the Small Municipality Plan A form of government, are inconsistent, they are incompatible, and they cannot coexist. Were Mr. Coldren's legal position to be adopted, those two would somehow have to exist side by side, which would produce either confusion or chaos, neither of which I believe to be intended by the legislature, or the people of Cape May, or required by the law as I understand it.
....
However, in reading the statute [N.J.S.A. 40:69A-207] in attempting to be consistent with its overall purpose, it is my view that it should not be read to have mandated a municipality to continue an office, a policy making office, a high level office such as city manager, upon a change of government that itself has at its very core and purpose the elimination of that position. To allow that municipality to make that change of government on the one hand and then to take away the benefits of that change on the other is a reading that I do not believe is fair to give to 40:69A-207. I will not assume that the legislature would have intended such an inconsistent, and in my view nonsensical result.
....
To me, it is not a fair reading to suggest that the legislature would have intended that [the office of City Manager and its] office and those duties to survive in a change of government such as the one that was mandated by the people of Cape May, so I'm not persuaded that Laboda vs. Clark [Tp., 40 N.J. 424, 193 A.2d 97 (1963) ] requires a different result than the one I have reached here.
....
The voters of the City of Cape May have made a decision, and the decision was to change the form of government. And to implement that decision the councilmen of the City of Cape May adopted an ordinance which established a new form of government and created new offices, and the office of municipal manager is not part of that process.
It is my view that that was action that was properly authorized, not precluded. And in my judgment it was not necessary under the circumstances for the city to continue to employ Mr. Coldren indefinitely, or to change his position, or to give him some other job. He was in as a holder of an office, the office was properly abolished, and his tenure rights, assuming he had them, unfortunately from his perspective, were concluded with that action.
The functions performed by a City Manager, pursuant to N.J.S.A. 40:82-4, are now performed in Cape May by the mayor under N.J.S.A. 40:69A-121. The positions under the form of government adopted by Cape May are incompatible and cannot co-exist. If Coldren were to prevail, the unlimited right of citizens to change their form of municipal government, see N.J.S.A. 40:69A-1 et seq., would be unduly burdened. See N.J.S.A. 40:69A-29(a) (giving municipalities "full power" to "establish, alter, and abolish offices"). See also N.J.S.A. 40:69A-206 to -207; Broadway Nat'l Bank of Bayonne v. Parking Auth. of Bayonne, 40 N.J. 227, 235, 191 A.2d 169 (1963); McCartney v. Franco, 87 N.J.Super. 292, 298, 209 A.2d 329 (App.Div.1965) (noting that N.J.S.A. 40A:69A-207 protects *1007 tenured officers "[b]ut offices and positions may subsequently be abolished by proper municipal action, just as they could have been prior to adoption of the Faulkner Act, and the tenure rights of the holders thereof can thereby be lost.").

II.
When the offer of judgment was made, only defendant's breach-of-contract counterclaim remained. The trial judge awarded plaintiff fees and costs because defendant rejected the offer of judgment and recovered 68 cents less than the amount offered. See R. 4:58-3. We believe that the offer-of-judgment rule can be applied to surviving claims after partial summary judgment has been granted, and one or more counts are dismissed in advance of trial, provided that the time requirements of R. 4:58-1 can be satisfied.[4] Nevertheless, as no case has yet so held, we are satisfied that defendant could have reasonably interpreted the Rule to apply only to an offer to dispose of all claims so that Coldren's acceptance of the city's offer would have required him to abandon pursuit, by appeal or otherwise, of the prior dismissed counts. Accordingly, we conclude that the offer-of-judgment rule should not have been applied in this case and reverse that part of the judgment awarding attorney's fees and costs to plaintiff.[5]
After discovery was completed on defendant's breach-of-contract counterclaim, trial was scheduled for June 19, 1997. Plaintiff sent defendant an offer of judgment on May 13, 1997, offering to allow judgment to be taken against the city in the amount of $19,047.40, based on money owed to Coldren for vacation, sick and personal time. As noted, the offer was declined, and defendant was awarded $19,046.72, or 68 cents less than the city's offer of judgment.
Cape May thereafter filed a motion for attorney's fees and costs under R. 4:58-3 because Coldren had rejected its offer of judgment.
In granting the motion, the trial judge interpreted the offer-of-judgment rule as applying to the single remaining claim of a case otherwise disposed. He said that "[w]hen the offer regarding count two was made that is all that was left in the case," and "a reasonable reading of that offer and/or the rule would [not] have meant that the acceptance of that offer would have included a waiver with respect to all of the other issues that had already been decided ... and which were anticipated to be part of an appeal that would eventually be filed." The judge believed that if Coldren had any question about the impact of the offer on the anticipated appeals, he could have asked the court, and not having done so, he could not escape liability on that basis. Accordingly, the judge made the award to plaintiff.[6]
*1008 In Schettino v. Roizman Dev., Inc., 158 N.J. 476, 730 A.2d 797 (1999), the Supreme Court addressed whether a single defendant, whose offer to settle a claim has been rejected, could recover attorney's fees from the plaintiff pursuant to the offer-of-judgment rule. The Court held that a plaintiff asserting "that multiple defendants are jointly and severally liable is not subject to the financial consequences of Rule 4:58-3 for rejecting" a single defendant's offer to settle its own claim. Id. at 478, 730 A.2d 797.[7]
Schettino dealt with a different problem than the present case because it concerned the potential disposition of less than all parties, as opposed to less than all claims. Nevertheless, its analysis is instructive. As the Court explained, the rule was "designed particularly as a mechanism to encourage, promote, and stimulate early out-of-court settlement of negligence and unliquidated damages claims that in justice and reason ought to be settled without trial." Id. at 482, 730 A.2d 797 (citing Crudup v. Marrero, 57 N.J. 353, 361, 273 A.2d 16 (1971)). To achieve that end, "the rule imposes financial consequences on a party who rejects a settlement offer that turns out to be more favorable than the ultimate judgment." Ibid. Where the award, as here, "is at least as favorable to the offeror as the offer, the offeror shall be allowed, in addition to costs of suit, a reasonable attorney's fee, for such subsequent services as are compelled by the non-acceptance" of the offer. R. 4:58-3.
The Schettino Court reasoned that financially penalizing a plaintiff for rejecting a settlement offer by a single defendant in a multiple-defendant case "would undermine the purpose of joint and several liability." Id. at 484, 730 A.2d 797. Thus, "plaintiffs need consider only an offer to settle the entire liability on behalf of all defendants." Ibid. Therefore, if only a single defendant offers to settle, that defendant may not receive counsel fees pursuant to R. 4:58-3 if the plaintiff rejects the offer. Ibid.[8]Cf. N.J.S.A. 2A:15-59.1(b) regarding "continu[ation] of litigation in bad faith."
Prior to its decision in Schettino, the Court in Crudup v. Marrero, supra, 57 N.J. at 361, 273 A.2d 16, held that R. 4:58 applies to the Unsatisfied Claim and Judgment Fund, but noted that certain cases might "warrant a discretionary determination by the trial court" that the Rule "should not be applied" in given circumstances. Crudup, supra, 57 N.J. at 362, 273 A.2d 16. In fact, the Court expressly stated that the Fund could seek the trial court's permission to be relieved from application of the Rule. Ibid. Accordingly, a trial court has the discretion not to apply the rule if "fairness and justice" warrant relief. Ibid. See also R. 1:1-2 (relaxation of rules).
Because Crudup was the first case to raise the issue of the Fund's responsibility under R. 4:58, the Court recognized that neither the Fund nor the trial court knew that the Fund could have been relieved from the mandates of the offer-of-judgment rule by filing a fact-supported application. *1009 Id. at 364, 273 A.2d 16. Thus, rather than hold the Fund immediately accountable under the Rule, the matter was remanded to allow that proceeding to occur. Ibid. Accordingly, the Court did not hold the Fund responsible under R. 4:58 in "the first case in which the Fund's responsibility" under the Rule was presented. Ibid.
We apply the same approach in this case as the Court did in Crudup. While we interpret R. 4:58 to apply to a single remaining count following the entry of partial summary judgment, and find that its application would not affect the right to appeal the prior dispositions following the entry of final judgment,[9] we decline to apply that interpretation in this case. Cf. State v. Clark, 162 N.J. 201, 744 A.2d 109 (2000); Coons v. American Honda Motor Co. Inc., 96 N.J. 419, 424-35, 476 A.2d 763 (1984), cert. denied, 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985). In cases in which an offer of judgment is made after today with respect to a surviving count or claim, an award can be made under R. 4:58-2 or -3 with respect to that portion of the fees and costs attributable to the "subsequent services as are compelled by the non-acceptance." R. 4:58-2, -3. However, in the interest of fairness, this interpretation of the Rule cannot apply to Coldren.
We acknowledge that Coldren never advised the trial judge that he did not believe the offer of judgment could be applied only to one count of a claim, but he suggested that if he accepted the offer he would not have been allowed to appeal from the dismissal of his other claims. See, e.g., State v. Gibson, 68 N.J. 499, 511, 348 A.2d 769 (1975) (finding that a waiver of appeal through settlement by plea agreement is in the public interest); Tefft v. Tefft, 192 N.J.Super. 561, 569-70, 471 A.2d 790 (App.Div.1983) (noting that New Jersey public policy favors settlements and "[t]he policy of our law is that a settling party is released from further responsibility."). Accordingly, his understanding of the Rule at the time was reasonable and the assessment of fees and costs in this case was unwarranted.

III.
We find no need to make any further comments with respect to the remaining issues raised. R. 2:11-3(e)(1)(E).
The award to plaintiff is reversed, and the matter is remanded for entry of an amended judgment consistent with this opinion.
NOTES
[1] The judgment provided that "Coldren shall be reimbursed any portion of the legal fees and costs awarded to the Plaintiff City of Cape May if Plaintiff ... is later successful in obtaining from its insurance carrier reimbursement of the counsel fees it incurred to defend the claims asserted in Count Two of the Counterclaim," the "breach of contract" claim. As no issue regarding this provision is raised before us, we do not comment on it.
[2] Other counts of the counterclaim and a third-party complaint were dismissed and are not relevant to this appeal.
[3] The conclusion that the 1995 change of government is dispositive even if defendant achieved tenure avoids the need to consider the impact of prior litigation between the parties, the positions taken therein, and the impact of defendant's post-litigation contract executed in 1990.
[4] As the offer was made more than twenty days before the first scheduled trial date in 1997, there is no claim that the Rule does not apply in this case on the ground that the offer was untimely made. R. 4:58-1 was subsequently amended, effective September 1, 1998, to change the trigger date, but that amendment does not affect the issues in this case.
[5] While the trial court rejected Coldren's severance, extra-duty and reimbursement claims, the $19,047.40 offer was based only on calculations for "vacation" "sick time" and "personal day[s]." In a letter dated August 28, 1995, the city's Chief Financial Officer/Treasurer reported to the mayor that vacation, sick and personal time due Coldren totalled $19,046.72 (although later reduced to $19,044.60). The judge relied on this calculation in rendering his decision. In light of our holding, we need not decide whether the 68-cent difference between the Chief Financial Officer's initial calculation and the offer warrants non-application of the Rule on equitable grounds. Nor do we decide whether a 68-cent difference between the offer and the final judgment warrants an exception to the Rule on de minimis grounds.
[6] The judge ultimately awarded plaintiff legal fees of $37,500, plus costs of $2,087.13, for a total award of $39,587.13.
[7] The issue and a related question were referred by the Court to the Civil Practice Committee. Schettino, supra, 158 N.J. at 488-89, 730 A.2d 797. We do the same with respect to the issue raised in this case. The Civil Practice Committee's recommendations on the questions referred to in Schettino and others are embodied in the Civil Practice Committee Report, 159 N.J.L.J. 642, 648, 650-51, 9 N.J.L. B12-13 (Feb. 14, 2000).
[8] The offeror-defendant in Schettino had argued that it was essentially "the only defendant" in the case because only that defendant could have been liable to the plaintiff on his tortious interference claim. Id. at 485, 730 A.2d 797. The Court rejected this argument, finding that as long as the plaintiff's complaint was "in good faith" asserting joint-and-several liability among defendants on all the counts, the plaintiff could not be subject to the Rule because there was no total offer disposing of the entire case, and thus attorney's fees could not be assessed. Ibid.
[9] We recognize that the offer could be affected by the prior disposition and that a successful appeal would still be possible notwithstanding the acceptance. However, we leave to counsel the need to consider such factors when making an offer of judgment in the absence of a settlement of the open or unresolved count or claims.