NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5367-18

BRIAN and KRISTINA
PUGLIA,

      Plaintiffs-Appellants/
Cross-Respondents,

v.

ROSEMARIA PHILLIPS and
ARTHUR PHILLIPS,

      Defendants-Respondents/
Cross-Appellants,

and

ESTATE OF ANGELINA
PUGLIA,

      Defendant-Respondent.
_____

APPROVED FOR PUBLICATION

August 15, 2022

APPELLATE DIVISION

Argued January 18, 2022 – Decided August 15, 2022

Before Judges Messano, Rose and Enright.

On appeal from the Superior Court of New Jersey,
Law Division, Burlington County, Docket No.
L-0945-16.

Michael S. Rothmel argued the cause for
appellants/cross-respondents.

Thomas P. Kelly, III argued the cause for respondents/cross-appellants Rosemaria Phillips and Arthur Phillips (Kelly Law Offices, LLC, attorneys; Thomas P. Kelly, of counsel and on the briefs).

Law Offices of Robert F. Rupinski, LLC, and J. Llewellyn Mathews, attorneys for respondent Estate of Angelina Puglia (Robert F. Rupinski and J. Llewellyn Mathews, on the brief).

The opinion of the court was delivered by:

MESSANO, P.J.A.D.

Angelina Puglia died in 2006. Her will named her three children — William Puglia, Arthur Puglia Sr. (Arthur Sr.), and Rosemaria Phillips — as sole beneficiaries of the estate (the Estate).[1] A lengthy, acrimonious dispute arose regarding the Estate's primary asset, a sixty-seven-acre farm (the Property). In probate, Rosemaria Phillips and her husband, Arthur Phillips (collectively defendants), filed a complaint against Arthur Sr.'s son, Brian Puglia and his wife, Kristina Puglia (collectively, plaintiffs), alleging that Arthur Sr. had allowed plaintiffs to live on the Property at a reduced rent and operate an excavating business that caused damage to the property.

Plaintiffs, who were evicted from the Property in September 2015, filed a counterclaim against defendants and the Estate, alleging, among other things,

---

[1] Because several individuals share the same last name, we sometimes refer to them by their first names to avoid confusion. We intend no disrespect by this informality.

wrongful eviction under the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12 (the Act). After extensive litigation in the Probate Part, defendants ultimately purchased the Property from the Estate in May 2016. Plaintiffs' counterclaims were severed and transferred to the Law Division. The case management order entered in the Law Division required plaintiffs to replead their causes of action in an amended complaint. What followed forms the bases of this appeal and cross-appeal.[2]

Ultimately, the Law Division judge entered orders denying plaintiffs partial summary judgment and granting defendants partial summary judgment dismissing plaintiffs' claim for wrongful eviction under the Act (the January 2019 orders); she also denied plaintiffs' motion for reconsideration (the March 2019 order). Over plaintiffs' objection, pursuant to the Offer of Judgment rule, Rule 4:58-1 to -6, the judge entered final judgment for $10,107.77 in plaintiffs' favor. This appeal followed.

I.

---

[2] The Estate filed a separate appeal based on the dismissal of its claims in the Law Division seeking indemnification from defendants for damages, costs and fees arising out of the Estate's defense of plaintiffs' claims for wrongful eviction. The appeals were calendared back-to-back and argued on the same day. We were subsequently advised that the Estate and defendants amicably settled their dispute, and we dismissed that appeal, A-5355-18.

We provide necessary background before turning to consideration of the issues presented on appeal.

Defendants contracted with the Estate to purchase the Property in 2015. A condition precedent to the sale was the Estate's obligation to remove plaintiffs from what had been Angelina's residence, described in the contract as a "rental unit, . . . Unit 'A'." Plaintiffs, who operated Puglia Excavating, LLC, on the Property, had moved into Unit A and parked some equipment and stored materials related to the business on the Property. Defendants, in turn, affirmatively represented in the contract of sale that "they wish[ed] and intend[ed] to personally occupy . . . Unit 'A'[] so as to establish 'good cause' and grounds for eviction, pursuant to N.J.S.A. 2A:18-61.1(l)(3)." That section of the Act provides "good cause" to evict a residential tenant if "[t]he owner of a building of three residential units . . . has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing."

Although disputes arose between defendants and the Estate regarding pre-closing obligations, in June 2015, at defendants' request, the Estate filed an

eviction complaint, which resulted in plaintiffs' eviction.[3] Disputes continued between defendants and the Estate, ultimately leading the Estate's administrator to terminate the contract of sale with defendants.[4]

The Estate then entered into a contract to sell the Property to Arthur, Sr., and the administrator sought the probate court's approval for the termination of the contract with defendants and authorization to sell the Property to Arthur, Sr. Defendants filed suit seeking, among other things, specific performance of their contract with the Estate. In April 2016, the probate judge granted defendants' request, and, in May 2016, the Estate and defendants finally closed on the Property. On August 24, 2016, defendants transferred title to the Property to RAP Farm Enterprises, LLC (RAP); they never personally occupied Unit A.

Plaintiffs' amended complaint filed in the Law Division asserted claims for wrongful eviction under N.J.S.A. 2A:18-61.6(b)[5] and the common law,

---

[3] There is no judgment of possession in the record, but the record reveals plaintiffs obtained a hardship stay until September 30, 2015, at which point they vacated the Property.

[4] William and Arthur, Sr. were named co-executors under Angelina's will, but disputes between them led the probate judge to appoint J. Llewellyn Mathews, Esq., to serve as administrator for the Estate.

[5] N.J.S.A. 2A:18-61.6(b) provides: "If an owner purchases the premises pursuant to a contract requiring the tenant to vacate in accordance with

fraud, negligent misrepresentation, equitable fraud, wrongful eviction, negligent failure to notice plaintiffs of breach, and invasion of privacy. Defendants filed an answer and counterclaim, asserting plaintiffs' negligence caused damage to the Property and rendered portions of it "unusable."

In initial motion practice, the judge entered an order dismissing plaintiffs' claims under the Act as a matter of law, concluding plaintiffs were commercial tenants not protected by the Act. However, after reconsideration, the judge's July 26, 2017 order reinstated plaintiffs' wrongful eviction claims under the Act; her September 26, 2017 order denied defendants' motion for reconsideration.

In November 2018, plaintiffs moved for summary judgment, arguing defendants were liable as a matter of law because they arbitrarily failed to occupy Unit A in the six months after plaintiffs' eviction, and the transfer of title to RAP made it impossible for them to personally occupy the unit.

_____

[N.J.S.A. 2A:18-61.6(l)] and thereafter arbitrarily fails to personally occupy the premises for a total of at least six months, but instead permits personal occupancy of the premises by another tenant . . . , such owner-purchaser shall be liable to the former tenant in a civil action for three times the damages plus the tenant's attorney fees and costs."

Plaintiffs alleged defendants let their son and his girlfriend move into Unit A instead.

Defendants cross-moved, arguing the transfer of title to RAP made it impossible for them to have personally leased the premises to another tenant. They disputed that their son was a tenant in Unit A.

In her written decision denying plaintiffs' motion and granting defendants' cross-motion, the judge found because defendants sold the property to RAP,

> after August 24, 2016, they were no longer the owners of the [P]roperty and therefore could not have permitted personal occupancy of the premises by another tenant. Despite intimations from [p]laintiffs that [d]efendants became "other tenants" following the sale of the Property to RAP, this cannot establish a violation of N.J.S.A. 2A:18-61.6 because it is axiomatic that the "other tenant" which the owner permits to personally occupy the premises must be a separate individual from the owner or, in this case, the former owner. Therefore, the [c]ourt finds that based on the sale of the Property to RAP, there can be no violation of N.J.S.A. 2A:18-61.6.

The judge entered the January 2019 orders.

Plaintiffs moved for reconsideration, which the judge denied in her March 2019 order. In addition to concluding plaintiffs failed to present any evidence she had overlooked, or that she had ignored relevant evidence or precedent, the judge specifically rejected plaintiffs' claim that defendants'

transfer of the property to RAP was a fraudulent attempt to avoid the Act. In her written statement of reasons, the judge noted plaintiffs' claim that the transfer of the Property to RAP was fraudulent and warranted piercing of the corporate veil contradicted their position on summary judgment that the transfer to RAP essentially was sufficient to demonstrate defendants' violation of the Act.

Approximately two weeks later, defendants filed an offer of judgment allowing plaintiffs to take judgment against them in the amount of $10,107.77. By letter dated April 1, 2019, and filed with the court on April 2, plaintiffs' counsel responded to the offer, telling defense counsel and the court that his clients "accept[ed] the offer of judgment."

The next day, April 3, 2019, by separate letter to the judge, plaintiffs' counsel acknowledged his previous acceptance of the offer of judgment on plaintiffs' behalf but claimed it "only applie[d] to the open claims currently before the [c]ourt and d[id] not apply to the claims under N.J.S.A. 2A:18-61.6." Citing our decision in City of Cape May v. Coldren, 329 N.J. Super. 1, 10 (App. Div. 2000), counsel contended "the acceptance of the [o]ffer of [j]udgment does not affect [p]laintiffs' right to appeal the prior summary judgment [o]rders regarding the '61.6' claims. The time to appeal would start at the time the [c]ourt enters [f]inal [j]udgment on the currently surviving

counts of the [s]econd [a]mended [c]omplaint." Counsel asked the judge to notify him when judgment was entered so that he could "review [his] client[s'] appellate rights with them."

Plaintiffs' counsel submitted a proposed order for judgment "on the remaining counts" of the complaint, thereafter, specifically listed in the proposed judgment. Defense counsel objected, asserting any limitation of plaintiffs' acceptance and reservation of a right to appeal violated Rule 4:58-4(c). Defense counsel maintained that plaintiffs waived their right to appeal earlier rulings when they accepted the offer of judgment, and he included a proposed form of judgment. Plaintiffs' counsel replied, once again, asserting our decision in Coldren did not bar appeal of the earlier summary judgment orders.

After considering oral argument on May 2, 2019, the judge used defendants' proposed form and on May 10, 2019, entered judgment in plaintiffs' favor for $10,107.77.[6] In a letter to counsel accompanying the order, the judge rejected plaintiffs' argument, noting Coldren was decided before the subsequent amendment to Rule 4:58.

II.

---

[6] We were not provided with a transcript of the oral argument.

Plaintiffs contend in Points I and II of their brief that the judge erred in denying their motions for summary judgment and reconsideration because they proved as a matter of law that defendants violated the Act. In Point III, addressing the appealability of the motion judge's interlocutory orders, plaintiffs argue "there was no meeting of the minds such that the court should have found there was no acceptance of defendants' offer of judgment."

Defendants filed a defensive cross-appeal, seeking review of the trial court's July 26 and September 26, 2017 orders, in which the court reinstated plaintiffs' complaint and denied reconsideration. Defendants contend the judge correctly decided initially that plaintiffs were commercial, not residential, tenants and not subject to the protections of the Act. The Estate takes no position on the appeal or cross-appeal.

Having reviewed the record and considering applicable legal principles, we reject plaintiffs' argument in Point III. Their acceptance of defendants' offer of judgment included "all claims made . . . against" defendants, Rule 4:58-4(c), including those previously dismissed on summary judgment. We therefore affirm the Law Division's judgment without consideration of plaintiffs' challenge to the interlocutory orders. We dismiss the cross-appeal.

III.

10

Our consideration of this issue requires us to interpret a court rule. "[W]e review legal determinations based on an interpretation of our court rules de novo[,]" Occhifinto v. Olivo Constr. Co., LLC, 221 N.J. 443, 453 (2015) (citing State ex rel. A.B., 219 N.J. 542, 554–55 (2014)), "apply[ing] the same canons of construction to a court rule that we apply to a statute," Cadre v. Proassurance Cas. Co., 468 N.J. Super. 246, 263 (App. Div. 2021) (citing Mortg. Grader, Inc. v. Ward & Olivo, LLP, 438 N.J. Super. 202, 210 (App. Div. 2014), certif. denied, 249 N.J. 338 (2021)).

"We look first to the plain language of the rules and give the words their ordinary meaning." Robertelli v. N.J. Off. of Att'y Ethics, 224 N.J. 470, 484 (2016) (citing Bridgewater-Raritan Educ. Ass'n v. Bd. of Educ. of Bridgewater-Raritan Sch. Dist., 221 N.J. 349, 361 (2015); N.J.S.A. 1:1-1). "We also read the language of a rule 'in context with related provisions so as to give sense to the [court rules] as a whole.'" Ibid. (alteration in original) (quoting Wiese v. Dedhia, 188 N.J. 587, 592 (2006)). "If the text of the rules is ambiguous, we can turn to extrinsic evidence, including committee reports, for guidance." Ibid. (citing Cast Art Indus., LLC v. KPMG LLP, 209 N.J. 208, 222 (2012)).

"The offer of judgment rule . . . was 'designed . . . as a mechanism to encourage, promote, and stimulate early out-of-court settlement of . . . claims

that in justice and reason ought to be settled without trial.'" Willner v. Vertical Reality, Inc., 235 N.J. 65, 81 (2018) (quoting Schettino v. Roizman Dev., Inc., 158 N.J. 476, 482 (1999)); see also Best v. C&M Door Controls, Inc., 200 N.J. 348, 356 (2009) ("The fundamental purpose of the rule is to induce settlement by discouraging the rejection of reasonable offers of compromise."). "That goal is achieved through the imposition of financial consequences (the award of fees and costs) where a settlement offer turns out to be more favorable than the ultimate judgment." Ibid. (citing Firefreeze Worldwide, Inc. v. Brennan & Assocs., 347 N.J. Super. 435, 441 (App. Div. 2002)); see also R. 4:58-2 (explaining consequences of not accepting a claimant's offer); R. 4:58-3 (explaining consequences of not accepting an offer by "a party other than the claimant").

Rule 4:58-4(c), entitled, "Multiple Claims," provides in full: "If a claimant asserts multiple claims for relief or if a counterclaim has been asserted against the claimant, the claimant's offer shall include all claims made by or against that claimant. If a party not originally a claimant asserts a counterclaim, that party's offer shall also include all claims by and against that party." (emphasis added). See Pressler & Verniero, Current N.J. Court Rules, cmt. 6.2 on R. 4:58 (2022) ("The rule also requires that when there are multiple claims for affirmative relief or the assertion of a counterclaim, the

12                                                                    A-5367-18

claimant's offer include all claims <u>made by and against him [or her]</u>.")
(emphasis added).  <u>Rule</u> 4:58-1(b) provides:

> <u>If</u> at any time on or prior to the [tenth] day before the actual trial date <u>the offer is accepted, the offeree shall serve on the offeror and file a notice of acceptance with the court</u>. . . . An offer shall not . . . be deemed withdrawn upon the making of a counter-offer by an adverse party but shall remain open until accepted or withdrawn as is herein provided.
>
> [(Emphasis added).]

By the clear language of <u>Rule</u> 4:58-4(c), defendants' offer of judgment "include[d] all claims by and against [them]."  Nothing in the <u>Rule</u> limits the claims covered by the settlement offer to only those still pending before the court.  Allowing a party to accept an offer of judgment only as to claims still pending, while at the same time permitting extinct claims to be resurrected for purposes of appeal, is not only contrary to the plain language of the <u>Rule</u> but also undermines the general purpose of the <u>Rule</u>, which is to foster settlements.

Before the trial judge, plaintiffs contended our decision in <u>Coldren</u> supported the continued viability of their right to appeal the interlocutory summary judgment orders dismissing their claims under the Act.  Their reliance on dicta in our decision is misplaced.

13

In Coldren, the defendant appealed from a final judgment in favor of the municipal plaintiff, which had successfully obtained summary judgment on, or successfully dismissed, all the defendant's counterclaims, except his breach of contract claim.  329 N.J. Super. at 3.  The plaintiff made an offer of judgment, which the defendant rejected, and even though the defendant prevailed at trial on his breach of contract claim, the award was sixty-eight cents less than the offer of judgment.  Id. at 3–4, 7.  That triggered the provisions of Rule 4:58-3, and the judge awarded the plaintiff municipality legal fees and costs based on the defendant's non-acceptance of the offer of judgment, which, when netted out, resulted in a judgment in favor of the plaintiff.  Id. at 7–8.

While affirming the dismissal of the defendant's other claims, id. at 6–7, we interpreted Rule 4:58 as it then existed "to apply to a single remaining count following the entry of partial summary judgment," but we also held "its application would not affect the right to appeal the prior dispositions following the entry of final judgment," id. at 10 (emphasis added).  Nevertheless, we vacated the award to the plaintiff "in the interest of fairness."  Id. at 11.

The defendant in Coldren rejected the plaintiff's offer of judgment, so, there was no settlement of any claims that he asserted.  It logically follows that we did not foreclose the defendant's "right to appeal the prior disposition[]."  Id. at 10.  What plaintiffs in this case seem to lose sight of is that they

14

accepted defendants' offer, which was a settlement of "all claims by and against" defendants. R. 4:58-4(c) (emphasis added). In short, Coldren provides no support for plaintiffs' position.

Moreover, as the judge recognized, when we decided Coldren, Rule 4:58-4 did not exist; indeed, at that time, Rule 4:58 did not address issues regarding an offer of judgment in litigation involving multiple parties or multiple claims. See Pressler, Current N.J. Court Rules, cmt. on R. 4:58 (2000). A subsequent amendment adopted Rule 4:58-4, but at the time, the Rule only applied to multiple defendants and did not address multiple claims. See Pressler, Current N.J. Court Rules, cmt. on R. 4:58 (2001) (noting the "newly adopted R. 4:58-4 addresses the multiple defendant situation" referred to by "the Civil Practice Committee on the . . . Court's directive in Schettino v. Roisman Development, 158 N.J. 476 (1999)").[7]

Confusion regarding application of the offer of judgment rule to litigation involving multiple claims continued after these amendments. In Firefreeze, the plaintiff tendered an offer of judgment, and the defendant, which had asserted a counterclaim, tendered a counteroffer of judgment. 347

---

[7] In Schettino, the Court held that a plaintiff asserting "that multiple defendants are jointly and severally liable is not subject to the financial consequences of Rule 4:58-3 for rejecting. . . a single defendant['s]" offer to settle its own claim. Id. at 478.

N.J. Super. at 438. When neither party accepted the other's offer, the case went to trial with the plaintiff prevailing on its claim, and the jury returning a no cause verdict on the defendant's counterclaim. Ibid. The plaintiff sought an award of fees, but the trial judge, interpreting the consequences of non-acceptance under Rule 4:58-2 to differ as to a claimant and a counterclaimant, limited the award to only the attorney's fees the plaintiff incurred in proving its claim, not those incurred in defending against the counterclaim. Id. at 438–39.

Writing for our court, Judge Skillman noted the plaintiff's offer to take judgment "was clearly intended . . . to apply to the entire case, including [the] defendant's counterclaim." Id. at 442. "[T]he offer of judgment rule's effectiveness in promoting the settlement of litigation would be undermined if it were construed to require a plaintiff against which a counterclaim is filed to submit separate offers of judgment on its affirmative claim and the counterclaim." Id. at 441. We further explained,

> if Rule 4:58 were construed to require separate offers of judgment whenever there are both claims and counterclaims, some parties undoubtedly would submit offers of judgment with respect to only the plaintiff's claim or the defendant's counterclaim, and even if such an offer were accepted, it would not resolve the entire litigation. Such tactical use of the offer of judgment rule could pose a risk of unfairness to some litigants, and would be of only limited value in conserving judicial resources. Therefore, we conclude that Rule 4:58 should be construed to authorize a plaintiff against which a counterclaim is

A-5367-18

> filed to submit an offer of judgment for resolution of the entire case including the counterclaim.

> [Id. at 441–42 (emphasis added) (citation omitted).]

The Court subsequently adopted subsection (c) of Rule 4:58-4, dealing with offers of judgment made when the litigation includes multiple claims. It became effective September 2004. See Pressler, Current N.J. Court Rules, cmt. on R. 4:58 (2005). In this case, the trial judge understood subsequent Rule changes limited Coldren's applicability.

Plaintiffs seemingly now realize the implications of the Rule changes, because the argument on appeal has morphed into an assertion that counsel's April 3, 2019 letter to the court was a counteroffer. Plaintiffs argue the judge failed to consider the entirety of Rule 4:58-1(b), which permits the tender of a counteroffer of judgment which, plaintiffs argue, in this case went unaccepted. Contrary to the position taken in the trial court, plaintiffs claim the judge should not have entered judgment but rather should have proceeded to trial on plaintiffs' remaining claims.

Plaintiffs' argument simply is not supported by the record. Their letter accepting the offer defendants made complied with Rule 4:58-1(b) and was filed with the court as required by the Rule. Plaintiffs' acceptance made no mention of a reservation of their right to appeal. When plaintiffs' counsel attempted to claim this right in a subsequent letter to the court, he only relied

on Coldren's dicta. He never claimed, even then, that plaintiffs made a counteroffer and defendants' offer of judgment was rejected. Counsel never asserted a right under Rule 4:58-1(b) to go to trial on the remaining open claims.

As we noted in another context involving the offer of judgment rule, "[p]arties are always free to preserve any claim they might have pursuant to a court rule or otherwise when settling a case, but they must clearly state that intention at the time of the settlement." Serico v. Rothberg, 448 N.J. Super. 604, 615–16 (App. Div. 2017) (citations omitted), aff'd, 234 N.J. 168 (2018). Plaintiffs failed to do so in this case.

Plaintiffs' acceptance of defendants' offer of judgment settled "all claims by and against" defendants, Rule 4:58-4(c), including plaintiffs' claims dismissed by interlocutory orders on summary judgment and for which reconsideration was denied. See Jacobs v. Mark Lindsay & Son Plumbing & Heating, Inc., 458 N.J. Super. 194, 205 (App. Div. 2019) (an order resulting from the parties' settlement is ordinarily not appealable even if it includes "a clause preserving an issue for appeal"). Plaintiffs may not now appeal those orders. As we said in Firefreeze Worldwide, "[s]uch tactical use of the offer of judgment rule could pose a risk of unfairness to some litigants and would be of

only limited value in conserving judicial resources."  347 N.J. Super. at 442 (citation omitted).

We affirm the judgment on appeal.  The cross-appeal is dismissed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5367-18