**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3819-21

ROBERT D. BORTECK, PC,

    Plaintiff-Respondent,

v.

FREDERICK KENNEDY AND
GABRIEL YANDOLI, CO-
EXECUTORS OF THE ESTATE
OF FRANCIS P. KENNEDY,
DECEASED,

    Defendants-Appellants.

_____

Submitted January 8, 2024 — Decided January 22, 2024

Before Judges Sabatino and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6444-19.

Schumann Hanlon Margulies, LLC, attorneys for appellants (John M. Loalbo, of counsel and on the briefs; Debra J. Surgan and Seth Alan Abrams, on the briefs).

1

Borteck & Czapek, PC, attorneys for respondent (Christine Socha Czapek, of counsel and on the brief).

PER CURIAM

Defendants Frederick Kennedy and Gabriel Yandoli appeal from: a February 28, 2022 order entering a money judgment against them in favor of plaintiff Robert D. Borteck, PC; a May 2, 2022 order awarding plaintiff attorney's fees; and a July 22, 2022 order denying reconsideration of the February and May 2022 orders. We affirm.

Defendants were the executors of the estate of Francis P. Kennedy. On April 14, 2008, defendants entered an agreement with the law firm of Borteck & Sanders, LLP, for services related to administration of the estate and trust. The initial retainer was $15,000.

On March 26, 2014, plaintiff notified defendants they owed $34,828.87 for legal services and requested payment. Plaintiff's correspondence advised defendants of their right to request fee arbitration pursuant to Rule 1:20A-6, but defendants did not opt into arbitration.

By May 2016, defendants had an unpaid balance of $32,318.92 on the estate matter and $3,891.14 on the trust matter. Defendants sued plaintiff for malpractice on October 11, 2013 and March 23, 2016. Both cases were dismissed. On June 5, 2016, plaintiff sued defendants for the outstanding fees.

A-3819-21

2

Plaintiff's complaint was dismissed without prejudice because there was a pending appeal regarding the dismissal of defendants' malpractice claims, and plaintiff had filed a counterclaim for fees in the malpractice cases.

Plaintiff was successful on the appeal, and following the appeal sued defendants for $36,210.06 in fees on August 8, 2019. On July 26, 2021, plaintiff filed an offer of judgment with the court and offered to allow judgment in its favor for $25,000. Defendants responded as follows: "As you have been previously advised, [the estate] is insolvent and any payments . . . regarding any [o]ffer of [j]udgment would be a preference at this time. Therefore, we are unable to respond to your [o]ffer of [j]udgment."

The matter proceeded to a bench trial. Defendants moved for a ruling regarding whether an affidavit of legal services was required under Rule 4:42-9(b). They argued an affidavit was necessary for the court to determine whether the fees were reasonable because the estate would be paying the fees. The court ruled no affidavit was required because this was a collection case.

Robert D. Borteck, Esq. was the sole witness at trial. He testified the estate was substantial when he was retained in April 2008—the federal estate tax return reflected "a gross estate of approximately [twelve] and a half million dollars." The estate's principal asset was Kennedy Trucking Company. Borteck

A-3819-21

explained Francis[1] "established . . . a number of trusts, both during his lifetime and under his will, for various family members . . . ." The estate included seven inter vivos trusts and another six trusts were created in Francis's will for each of his children. Frederick was sole trustee of the inter vivos trusts and defendants were co-trustees of the six trusts created under the will.

There were also irrevocable trusts created by Francis in 2002, which were labeled for billing purposes as follows:

> Donald Kennedy 2002 Irrevocable Trust & Testamentary Trust . . . Cash Flow Projections; Linda Kennedy 2002 Irrevocable Trust & Testamentary Trust . . . Cash Flow Projections; Cheryl Kennedy 2002 Irrevocable Trust & Testamentary Trust . . . Cash Flow Projections; Patricia Kennedy 2002 Irrevocable Trust & Testamentary Trust . . . Cash Flow Projections; Louis Kennedy 2002 Irrevocable Trust & Testamentary Trust . . . Cash Flow Projections; QPRIT; Irrevocable Trust II; Irrevocable Trust II . . . .

When plaintiff billed the estate, it billed the "Estate of Frank Kennedy."

Borteck testified that when he was retained, he sent defendants an engagement letter, which they signed and returned to him along with a payment of $10,000 against the $15,000 retainer. The engagement letter said defendants would be billed monthly and Borteck explained how he and other firm staff

---

[1] Because Francis and Frederick share a common surname, we use first names to differentiate them. We intend no disrespect.

A-3819-21

4

logged hours on defendants' matter.  Defendants never complained about the quality of his work or the reasonableness of the firm's fees.  Defendants paid the firm from the estate account.  Borteck testified he informs all fiduciaries in estate matters that if "part or all of the fees are not payable out of the estate, they remain personally responsible."

Defendants became delinquent in payment in 2011.  They owed the firm approximately $20,303.97.  Borteck notified Kennedy Trucking Company's chief financial officer (CFO) by email because he was "integrally involved in almost all aspects of the estate administration[.]"  Defendants were copied on the email.  The CFO requested the firm "split the monthly charges between the estate and the trust."  Borteck explained this was because the separate entities "have distinct liabilities," "three are insolvent, one is not," and they have "distinct beneficiary values . . . ."  The CFO told Borteck the estate had

> unilaterally taken [the] last four months of invoices to the [e]state and charged [fifty percent] of liability to the trusts with the approval of executors, trustee, accountant[,] and counsel.  Given the distinct differences between these entities, separate invoices seemed to be a more prudent support for payment of expenses incurred.

Borteck testified he complied with the request and "opened up a new ledger for the trust."

The attorney-client relationship with defendants terminated in the summer of 2012. Defendants owed the firm approximately $36,000.

The court found defendants were liable for the fees. It calculated damages as follows: one-half of the outstanding invoices for the time before the estate and trusts matters were billed separately (invoices dated June 1 and 29, 2011, August 1, 2011, and September 1, 2011) and the full amount owing on outstanding invoices billed to the estate (invoices dated October 13, 2011, November 11, 2011, December 2, 2011, January 3, 2012, February 6, 2012, March 1, 2012, April 2, 2012, June 1, 2012, and May 11, 2016).

The court entered judgment for plaintiff in the amount of $32,319.54, plus $3,289.07 in pre-judgment interest. Plaintiff moved for attorney's fees and costs pursuant to Rule 4:58 and filed a certification in support of the motion. The court awarded plaintiff $18,555 in fees and $1,219 in prejudgment interest.

Defendants moved for reconsideration of the judgment and the attorney's fees award. The court denied the motion.

I.

Although defendants' notice of appeal references the February and May 2022 orders, their brief argues the appeal through the lens of the July 2022

reconsideration order. We nonetheless review the underlying orders to discern whether the court correctly denied reconsideration.

Appellate review of a judgment following a bench trial is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). This is because the trial court's factual findings are entitled to deference on appeal if they are supported by sufficient credible evidence in the record. Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). Deference is particularly appropriate when the court's findings depend on credibility evaluations made after a full opportunity to observe witnesses testify. Cesare v. Cesare, 154 N.J. 394, 412 (1998).

A trial court sitting without a jury must "state clearly its factual findings and correlate them with the relevant legal conclusions." State v. Locurto, 157 N.J. 463, 470 (1999) (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)). "When the reviewing court is satisfied that the findings and result meet this criterion, its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal." Id. at 471 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). In other words, we will reverse only if the trial court's findings and legal conclusions were "so manifestly unsupported by or inconsistent with the

competent, relevant[,] and reasonably credible evidence as to offend the interests of justice[.]" Rova Farms, 65 N.J. at 484 (internal citation omitted).

We apply an abuse of discretion standard when reviewing an order denying reconsideration. Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002). This standard is inherently deferential. Pitney Bowes Bank, Inc v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). This is because motions for reconsideration are granted "only under very narrow circumstances[.]" Fusco, 349 N.J. Super. at 462. Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion . . . ." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Rather, reconsideration lies where "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Our review of issues of law is always de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

II.

On appeal, defendants argue that as executors they cannot be held personally liable for legal fees pursuant to N.J.S.A. 3B:14-31. The statute provides: "Unless otherwise provided in the contract, a fiduciary is not individually liable on a contract properly entered into in his fiduciary capacity in the course of administration of the estate unless he fails to reveal his fiduciary capacity and identify the estate in the contract." N.J.S.A. 3B:14-31.[2] They argue the court ignored the statute and instead relied upon Barner v. Sheldon, which held:

> An attorney's client is the executor of the estate, not the estate itself.
>
> > When an attorney is employed to render services in procuring admission of a will to probate or in settling the estate, he acts as attorney of the executor, and not of the estate and for his services the executor is personally responsible.
>
> [292 N.J. Super. 258, 265 (Law Div. 1995), aff'd, 292 N.J. Super. 157 (App. Div. 1996) (quoting In re Est. of Ogier, 101 Cal. 381 (Cal. 1894)).]

---

[2] The provision is modeled after Section 3-808 of the Uniform Probate Code and was enacted in New Jersey in 1981.

Defendants note the complaint did not name them individually, but instead read "Frederick Kennedy and Gabriel Yandoli, Co-Executors of the Estate of Francis P. Kennedy, Deceased."

At the outset, although defendants improperly raised the statute for the first time in their reply brief on the motion for reconsideration, we are satisfied there was no prejudice to plaintiff because there was oral argument on the issue before the court made its decision. As we noted, Borteck was the sole witness at trial. He testified to his lengthy experience in the trust and estates field over the course of fifty years.

Borteck testified the principles in Barner were considered "bedrock fundamental" to trust and estates practice and "it's very clear and well-known, it has been for decades, that the responsibility for the fees is a personal responsibility of the executors." He explained executors can pay the fees personally and reimburse themselves from the estate or "they can[,] . . . towards the . . . conclusion of an administration, . . . approach the beneficiaries with an accounting . . . [a]nd as part of that proceeding . . . seek approval for their own fiduciary commissions under N.J.S.A. 3B:18-14 and for the attorney[']s fees that they seek to reimburse themselves out of the estate."

Borteck testified it was not unusual for fiduciaries to pay attorney's fees from an estate's bank account. He said:

> I tell them . . . that is acceptable. . . . But they have to know that at the end of the road, they have to get approval from either all beneficiaries . . . or . . . from the court in connection with the judicial accounting proceeding. And importantly, . . . they're told that if and to the extent the fees payable . . . there's an objection or a court ruling that part or all of the fees are not payable out of the estate, they remain personally responsible.

Borteck testified that all the work performed was at the defendants' request. The firm's invoices were directed to Frederick rather than the estate because the firm was "serving as [Frederick's] counsel in his capacity as executor . . . ."

The court found Borteck's testimony "credible and consistent." Following Barner, it found as a matter of law "that the attorneys hired [in] . . . this particular situation with regard to an estate, are the attorneys for the executors, not the attorney for the estate itself."

At oral argument of the motion for reconsideration, plaintiff's counsel pointed out "there was no reference to the parties' fiduciary positions in any way" in the engagement letter. Rather, the engagement letter referred to defendants individually, which plaintiff noted was consistent with the court's

reliance on <u>Barner</u>, when it entered the February 2022 judgment. Counsel explained N.J.S.A. 3B:14-31 applies where an executor enters a contract "to sell a property . . . owned by the estate, or perhaps . . . contract[s] with a clean out service . . . ." The statute does not govern an attorney's services on behalf of an executor. The court agreed and denied reconsideration.

Our review of the record and the applicable law does not convince us the court erred when it denied reconsideration. N.J.S.A. 3B:14-31 did not apply to the parties' attorney-client relationship because it pertains to defendants' obligations to the estate and its beneficiaries in their capacity as fiduciaries and shields such fiduciaries from liability to contracting third parties unless they fail to disclose their fiduciary status. Indeed, N.J.S.A. 3B:14-32 reads as follows: "A fiduciary is individually liable for obligations arising from ownership or control of the estate or for torts committed in the course of administration of the estate only if he is personally at fault." N.J.S.A. 3B:14-33 states:

> Claims based on contracts entered into by a fiduciary in [that individual's] fiduciary capacity, on obligations arising from ownership or control of the estate or on torts committed in the course of estate administration may be asserted against the estate by proceeding against the fiduciary in [that individual's] fiduciary capacity, whether or not the fiduciary is individually liable therefor.

N.J.S.A. 3B:14-34 explains the types of proceedings to resolve issues of liability between the estate and the fiduciary. N.J.S.A. 3B:14-35 explains the extent of a fiduciary's liability to an estate where there is an improper exercise of power concerning the estate. N.J.S.A. 3B:14-36 addresses when a fiduciary may have a conflict of interest with an estate.

Therefore, N.J.S.A. 3B:14-31 and its attendant statutory provisions look to the fiduciary-estate relationship and define the extent of responsibility and liability of fiduciaries vis-à-vis an estate and third parties who enter into contracts with them; they do not enter the realm of the attorney-client relationship between an attorney and an executor. Furthermore, as Borteck noted, Barner remains good law. See Fitzgerald v. Linnus, 336 N.J. Super. 458, 469 (App. Div. 2001). The principles expressed in Barner are longstanding. See In re Est. of Foster, 13 N.J. Misc. 36, 39 (Orphans' Ct. 1934) (holding "Attorneys employed by a personal representative to assist him in administering his trust or to prosecute or defend actions for . . . him in his official capacity have no claim they can enforce directly against the estate. They are the attorneys of the representative not the estate."). In addition, no reported cases applying the source provision in the Uniform Probate Code adopt defendant's interpretation of the statute.

For these reasons, the court properly rejected defendant's assertion of N.J.S.A. 3B:14-31 as a defense to plaintiff's claims. The court's reliance on Barner was neither an abuse of discretion nor a mistaken application of the law.

III.

A.

Defendants argue the court erred by including prejudgment interest because there were multiple delays of the trial date due to the COVID-19 pandemic. They claim the pandemic constituted exceptional circumstances, which warranted the suspension of the accrual of prejudgment interest.

"Interest is not punitive," Busik v. Levine, 63 N.J. 351, 358 (1973), "it is compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." Bailey v. Pocaro & Pocaro, 305 N.J. Super. 1, 8 (App. Div. 1997) (quoting Busik, 63 N.J. at 358). When "the defendant has had the use, and the plaintiff has not, of moneys which the judgment finds was the damage plaintiff suffered[,]" interest on a money judgment is permissible. Busik, 63 N.J. at 359. "The intended effect of the interest award . . . is to place both parties in exactly the same position each would have been in, without loss to either, had the plaintiff's claim been

promptly paid." Kotzian v. Barr, 152 N.J. Super. 561, 565 (App. Div. 1977), rev'd on other grounds, 81 N.J. 360 (1979).

The court is authorized to suspend prejudgment interest. Dall'Ava v. H.W. Porter Co., 199 N.J. Super. 127, 129-30 (App. Div. 1985). However, doing so should be limited to "exceptional cases" and "should be used sparingly." N. Bergen Rex Transp. v. TLC, 158 N.J. 561, 575 (1999). "[P]rejudgment interest can consequently be withheld only where it is demonstrated that the policy, spirit and intent of the rule are patently inapposite to the circumstances at hand." Kotzian, 152 N.J. Super. at 564. See Dall'Ava, 199 N.J. Super. at 131 (finding exceptional circumstances warranting suspension of prejudgment interest where the delay in litigation was caused by bankruptcy proceedings involving a codefendant).

The Supreme Court did not suspend the operation of Rule 4:42-11(b) governing prejudgment interest during the pandemic. Moreover, defendants knew how much they owed plaintiff because they received invoices and had not paid plaintiff for years. The circumstances do not convince us it would be just to deprive plaintiff of the interest on money defendants clearly owed.

B.

Defendants claim the court erred in awarding plaintiff attorney's fees because defendants demonstrated "undue hardship" under <u>Rule</u> 4:58-2, namely, insolvency of the estate. They claim Borteck knew the estate was insolvent since at least 2012, as evidenced by multiple billing entries by the firm mentioning insolvency. Further, they argue plaintiff was required to submit an affidavit of services pursuant to <u>Rule</u> 4:58-6, and <u>Rule</u> 4:42-9(b), before the court could award attorney's fees but did not do so.

"The offer-of-judgment rule is 'designed particularly as a mechanism to encourage, promote, and stimulate early out-of-court settlement . . . without trial.'" <u>Schettino v. Roizman Dev.</u>, 158 N.J. 476, 482 (1999) (quoting <u>Crudup v. Marrero</u>, 57 N.J. 353, 361 (1971)). It "imposes financial consequences on a party who rejects a settlement offer that turns out to be more favorable than the ultimate judgment." <u>Ibid.</u> <u>See</u> <u>R.</u> 4:58-2; <u>R.</u> 4:58-3. The rule is meant "to encourage defendants to settle worthy cases." <u>McMahon v. N.J. Mfrs. Ins. Co.</u>, 364 N.J. Super. 188, 192 (App. Div. 2003).

The Supreme Court has stated, "it would thwart the rule to allow a party who has rejected a settlement to escape mandatory payment for any portion of the costs incurred as a result of his decision." <u>Wiese v. Dedhia</u>, 188 N.J. 587,

593 (2006). Thus, "the consequences of non-acceptance . . . under Rule 4:58 are mandatory." Id. at 589 (quoting McMahon, 364 N.J. at 194).

Pursuant to Rule 4:58-2(c), if an offer of judgment is rejected, and an allowance for fees, costs, and interest would result in undue hardship, a trial court is authorized to either withhold the allowance or, alternatively, reduce the allowance to a lower sum. Under the rule, the court should fix a reasonable fee and then "consider whether an award of that fee will constitute an 'undue hardship' on the payor[.]" Kas Oriental Rugs, Inc. v. Ellman, 407 N.J. Super. 538, 562 (App. Div. 2009). "If the answer to the second part of that question is in the affirmative, then the judge has the discretion to reduce the allowance to remove the hardship." Ibid. "The burden is on the offeree to establish the offeree's claim of undue hardship or lack of fairness." R. 4:58-2(c).

Having considered the record, we conclude there was no undue hardship warranting a reduction of the fee owed by defendants to plaintiff. Contrary to defendants' assertions, plaintiff's counsel submitted a certification of services to aid the trial court in its assessment of the reasonableness of the fees sought. The record reflects that the court reviewed the certification. The court noted "[t]his was a $36,201.06 collection action for which . . . plaintiffs . . . ran up a $43,300 legal bill." It reduced the $43,300 because it was not "reasonable in relation to

the amount . . . that was at issue in the case" and awarded $18,550 in attorney's fees and $1,219 in prejudgment interest.

We discern no abuse of discretion in the court's award of a sum that was less than half of the award plaintiff sought. Moreover, defendants failed to carry their burden of proving an undue hardship, because plaintiff's claim for payment was against defendants, not the estate. The discussion of insolvency noted in plaintiff's invoices regarded the estate, not defendants.

C.

Finally, defendants argue the trial court failed to consider evidence of the $6,303 they paid plaintiff and miscalculated the amount owed to plaintiff. They also assert Borteck charged $985.19 for "unauthorized services" after his termination and all invoices for work performed after July 31, 2012, were not compensable. These arguments lack merit.

The record shows the $6,303 comprised three payments of $2,101 defendants made in October 21, 2011, which were credited to the estate's account in plaintiff's invoice the following month. Further, Borteck explained the post-July 2012 entries "were necessary and required in order to protect the client[s'] interest" because they entailed conversations he had with a bankruptcy attorney. He "had referred [defendants to the bankruptcy attorney] in connection

A-3819-21

18

with insolvency issues relating to the trucking company and had been working in tandem with [the bankruptcy attorney] on those matters up to that point in time." He explained: "[I]t was important for [him] to protect the client['s] interest to make sure [the bankruptcy attorney] knew about the change of counsel with respect to the fiduciary obligations of [defendants]." Borteck's unrebutted testimony on this issue proves these entries were reasonable and compensable, and we discern no error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3819-21

19